[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE:
NO. 170 — PLAINTIFF'S OBJECTION TO ACCEPTANCE OF ATR REPORTNO. 171 — DEFENDANT'S OPPOSITION TO PLAINTIFF'S OBJECTIONNO. 172 — DEFENDANT'S EXCEPTIONS TO ATR REPORTCT Page 12784NO. 173 — DEFENDANT'S OBJECTIONS TO ACCEPTANCE OF ATR REPORTNO. 174 — PLAINTIFF'S OPPOSITION TO DEFENDANT'S EXCEPTIONSNO. 175 — PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTIONS
_____________________________________________________________
The plaintiff, One Sylvan Road North Associates (One Sylvan), filed a two-count "Fourth Revised Amended Complaint" against the defendant, Lark International Limited (Lark), on May 23, 1996. One Sylvan alleges that on or about July 14, 1992, the parties orally agreed that Lark would pay One Sylvan $28,000 per month for a period of time including November and December, 1992, in satisfaction of certain obligations of Lark to One Sylvan under a written lease and guaranty dated August 1, 1986. One Sylvan alleges that Lark, as guarantor, failed to make payments pursuant to the agreement in the amount of $56,000 for the months of November and December 1992. One Sylvan also alleges that under the guaranty, Lark agreed to indemnify One Sylvan for any reasonable fees and expenses, including attorney's fees, incurred by One Sylvan for the failure of Lark to comply with the provisions of the written guaranty. One Sylvan further alleges that based on Lark's conduct during October, November and December of 1993, Lark should be equitably estopped to deny that it owes One Sylvan $56,000.
Lark filed an "Answer, Affirmative Defenses and Counterclaim To Fourth Revised Amended Complaint" on May 28, 1996. Lark raises seven defenses to the first count of the Fourth Revised Amended Complaint. Lark argues in its first defense that when the parties entered into the written modification agreements to the 1986 lease on October 14, 1993 and November 29, 1993, the parties' oral agreement from June and July of 1992 terminated. Lark argues in its second defense that One Sylvan waived its right to payment of $56,000 under the oral contract by executing the subsequent written agreements. Lark argues in its third defense that One Sylvan ratified Lark's non-payment of the $56,000 by executing the subsequent modification agreements. Lark argues in its fourth defense that it was discharged from paying the $56,000 under the oral agreement, because the subsequent written modification agreements did not preserve One Sylvan's rights to payment under the oral agreement. Lark argues in its fifth defense that because the terms of the written modification agreements are at odds with the terms of the oral agreement, the original lease and written modification agreements prevail by virtue of their merger CT Page 12785 clauses, which in part prohibit any further modifications not made in writing. Lark argues in its sixth defense that any oral agreement was unenforceable as violating the statute of frauds, as it involves an interest in real property. Lark argues as a seventh defense that the oral agreement was not supported by adequate consideration.
Lark raises six further defenses to count two of the Fourth Revised Amended Complaint. Lark argues that One Sylvan's reliance on Lark's promise to pay rent in the amount of $28,000 per month for November and December 1992 was unjustified based on One Sylvan's execution of the modification agreements. Lark argues as a second defense that One Sylvan waived any right to the $56,000 by executing the modification agreements. Lark argues as a third defense that One Sylvan ratified any alleged non-payment of the $56,000 by virtue of signing the modification agreements which did not contain terms covering the payment of outstanding rent for November and December 1992. Lark argues as a fourth defense that One Sylvan discharged any obligation Lark had to pay the $56,000. Lark argues as a fifth defense that the modification agreements were accords and satisfactions which terminated the oral agreement. Lark argues as a sixth defense that in light of its express refusal to agree to the additional payment of $56,000 for guarantee rent for November and December 1992, and by the explicit language of the modification agreements, there was no assent to the payment of the $56,000. Lark's counterclaim seeks recovery of attorney's fees.
The matter was tried before attorney trial referee Dennis P. Anderson, who issued a sixty-nine page report on February 24, 1997, containing 115 findings of fact, seven conclusions of fact, and recommended rulings. The attorney trial referee concluded that judgment should enter for One Sylvan in the amount of $56,000 as damages and $28,222.19 and $5,448.45 as attorney's fees. The trial referee denied relief to Lark on its counterclaim.
On March 10, 1997, Lark filed a motion to amend, correct or strike facts found in the report, to include additional facts in the report, to amend, correct or strike conclusions of fact found in the report, objections to rulings of the attorney trial referee during the trial, and to amend, correct or strike the recommended ruling and conclusion in the report. One Sylvan also filed a motion to correct on March 10, 1997, seeking the inclusion of additional attorney's fees associated with a summary CT Page 12786 process housing court action pertaining to back rent owed by Lark. Lark filed an objection to One Sylvan's motion to correct, arguing that One Sylvan failed to include in its complaint any allegations of, or requests for relief with respect to, the summary process action previously settled by the parties, and that such an award was unsupported by the evidence adduced at trial.
The attorney trial referee denied One Sylvan's motion to correct in a decision dated September 12, 1997. In a separate forty-eight page decision filed on September 12, 1997, the attorney trial referee considered the forty requests of Lark to amend, correct or strike findings of fact, and modified or replaced sixteen of the original findings of fact. Six additional findings of fact were added to the report. No conclusions of fact or evidentiary rulings were altered. The attorney trial referee also declined to amend, correct or strike the recommended ruling and conclusion of the report.
One Sylvan has now filed a partial objection to the acceptance of the attorney trial referee's report pursuant to Practice Book § 440, which is opposed by Lark. In addition, Lark has filed both exceptions and objections pursuant to Practice Book §§ 439 and 440 to the attorney trial referee report, and One Sylvan has filed reply memoranda to both. The matter was heard specially by the court at short calendar on October 20, 1997.
DISCUSSION
"An attorney referee is obliged to report to the court the facts found and the conclusions drawn therefrom, but the report may be supplemented with a memorandum of decision including such matters as [the attorney referee] may deem helpful in the decision of the case." (Internal quotation marks omitted.) Tarkav. Filipovic, 45 Conn. App. 46, 50, 694 A.2d 824, cert. denied,242 Conn. 903, 697 A.2d 363 (1997). "The parties may seek additions or corrections in the facts contained in this report by filing a motion to correct with the attorney referee pursuant to Practice Book § 438." Id. "After the attorney referee responds to any motions to correct, the parties may file with the trial court exceptions to findings of fact pursuant to Practice Book § 439 or objections to factual conclusions or rulings pursuant to Practice Book § 440." Id., 50-51. CT Page 12787
 A. One Sylvan's Partial Objection To Acceptance Of The Attorney Trial Referee Report
One Sylvan has filed, pursuant to Practice Book § 440, a partial objection to the attorney trial referee's report, on the ground that the attorney trial referee failed to award attorney's fees incurred during a summary process action against Lark.[1]
One Sylvan argues that the Fourth Revised Amended Complaint contains an allegation that One Sylvan is entitled to attorney's fees caused by Lark's failure to comply with the provisions of the written guarantee. One Sylvan also argues that Lark was alerted to this claim and failed to object to it, but rather submitted a claim for its own attorney's fees incurred in the summary process action.
Lark opposes One Sylvan's partial objection to the acceptance of the attorney trial referee's report on the grounds that One Sylvan failed to include any allegation or request for relief in its pleadings concerning the summary process action, and that the evidence does not support such an award. Lark argues that One Sylvan's failure to plead the summary process issue precludes One Sylvan from litigating the matter. Lark also argues that the claim for attorney's fees must fail because the litigation commenced by One Sylvan was unnecessary and did not result from Lark's failure to comply with the terms of the parties' agreements.
The attorney trial referee recommended that One Sylvan's attorney's fees be limited to those fees related to the then-presently pending proceeding.[2] The attorney trial referee also recommended that the additional attorney's fees sought should be denied because One Sylvan failed to include a prayer for relief in the nature of attorney's fees and costs incurred in the Housing Court action. The attorney trial referee recommended the award of attorney's fees to One Sylvan stemming from the present action. (Attorney Trial Referee Report, February 24, 1997, p. 68).
"[T]he allegations of the complaint provide the measure of recovery, and the judgment cannot exceed the claims pleaded, including the prayer for relief." Todd v. Glines, 217 Conn. 1, 9,583 A.2d 1287 (1991). "These requirements, however, are based on the principle that a pleading must provide adequate notice of the facts claimed and the issues to be tried." (Internal quotation marks omitted.) Id., 9-10. The attorney trial referee based his CT Page 12788 recommendation on Bushnell Plaza Development Corp. v. Fazzano,38 Conn. Sup. 683, 460 A.2d 1311 (1983). There, it was determined that the "complaint contained no allegations regarding attorney's fees," and that in a similar situation the court had held that "[n]o judgment could be rendered, therefore, awarding counsel fees . . . since the matter was wholly outside the issues raised by the pertinent pleadings." Id., 688. See also Santini v.Kocher, 38 Conn. Sup. 506, 508, 452 A.2d 318 (1982) (no allegations regarding attorney's fees); Housing Authority,Colchester v. Gardiner, Superior Court, judicial district of New London at Norwich, Docket No. 216523 (June 1, 1994, Teller, J.) (no pleading for attorney's fees). Here, One Sylvan has alleged in the Fourth Revised Amended Complaint that Lark "agreed in its written guaranty dated August 1, 1986, to indemnify the plaintiff for any reasonable fees and expenses including attorney's fees incurred by the plaintiff landlord for the failure of the defendant to comply with the provisions of this written guaranty . . . ." In addition, One Sylvan prayed for damages in excess of "$15,000, interest, costs and reasonable attorney's fees."
Therefore, One Sylvan has pleaded facts in the Fourth Revised Amended Complaint sufficient to support an award of attorney's fees for those attorney's fees incurred by One Sylvan through the summary process action. The present case is distinguishable from Bushnell, where the plaintiff failed to re-allege a claim for attorney's fees. There, the court determined that a subsequent novation cancelled out a clause in the written lease requiring the tenant to pay attorney's fees. The court recognized that "[w]here a lease provides for costs and attorney's fees in connection with the collection of holdover rentals, [it] would not hesitate to assess such expenditures." Id., 688. Here, there has been no novation which would cancel the obligation of Lark to pay attorney's fees incurred by One Sylvan under the various written agreements. Moreover, the issue of attorney's fees was clearly within the issues raised by One Sylvan's pleadings. SeeSantini v. Kocher, supra, 38 Conn. Sup. 508.[3]
 B. Lark's Exceptions To The ATR Report
"Practice Book § 439 prohibits the correction of facts found by the referee unless a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." (Internal quotation marks CT Page 12789 (omitted.) Stamford v. Kovac, 229 Conn. 627, 633, 642 A.2d 1190
(1994). "A reviewing authority may not substitute its findings for those of the trier of the facts." Elgar v. Elgar,238 Conn. 839, 848, 679 A.2d 937 (1996). "The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . ." Id.[4] "[A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . ." Id. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id. "The trial court is authorized to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." (Internal quotation marks omitted.) National Elevator Industry v. Scrivani,31 Conn. App. 728, 732, 626 A.2d 1332 (1993). "In a matter heard before an attorney trial referee, the trial court's nondelegable judicial duty to render judgment turns on its ability to determine the facts found by the attorney trial referee. If the court finds material errors in the attorney trial referee's factual findings, it may, under those circumstances, order further proceedings." Id., 732-33.
Lark raises exceptions to the following findings of fact contained in the attorney trial referee report on the ground that the factual finding is not relevant to the issues in the complaint: 10, 11, 14, 15, 16, 18-22, 23, 26, 32-34, 54, 65, 73, 75, 106. To the extent the ground for these exceptions do not concern circumstances where "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear," pursuant to Practice Book § 439, Lark's exceptions on the ground of relevance should be denied. This argument is more appropriately raised as an objection to the acceptance of the report pursuant to Practice Book § 440, under which a party may object to the acceptance of a report based on errors in rulings on evidence.
Lark raises exceptions to the following findings of fact on the ground that Lark, at the time of trial, raised objections to the exhibits on which the finding of fact is based: 15, 16,18-22, 23, 26, 32-34. Because these exceptions hinge on the attorney trial referee's decisions to overrule certain evidentiary objections, this is an inappropriate ground on which to raise CT Page 12790 exceptions pursuant to Practice Book § 439. This argument is more appropriately raised as an objection to the acceptance of the report pursuant to Practice Book § 440, which encompasses claimed errors in rulings on the evidence.
Lark raises exceptions to the following findings of fact: 14, 45, 46, 53, 72 and 87. It appears to the court that the exceptions raised to each of these findings of fact involve the resolution by the attorney trial referee of conflicting evidence, and the weighing of witnesses' credibility. "Upon conflicting evidence, it is peculiarly within the province of the trier of fact to judge the credibility of the witnesses and to draw proper inferences." DeLuca v. C. W. Blakeslee Sons Inc.,174 Conn. 535, 547, 391 A.2d 170 (1978). Therefore, these findings of fact should not be disturbed.
Lark raises an exception to Factual Finding No. 10 of the report on the ground that it mischaracterizes evidence. Factual Finding No. 10 states: "Although Lark made the guarantee payments from November of 1989 through June of 1992 in the amount of $42,500.00 per month, starting in early June of 1991, the guarantee payments were often late." The evidence adduced at trial indicated that one reason why the parties entered into the October 1993 modification agreement was that the parties were attempting "to reconcile differences, disputes they'd been having for sometime." (Transcript, May 22, 1996, p. 62). The disputes "were about unpaid rent and related expenses . . . ." (Transcript, May 22, 1996, p. 62; May 21, 1996, p. 63-64). Based upon this evidence, The attorney trial referee's finding of fact was not clearly erroneous.
Lark also takes exception with Factual Finding No. 11 on the ground that it mischaracterizes the evidence. Factual Finding No. 11 states: "Mr. Donald Meyer of Lark[5] contacted Michael Schinella of One Sylvan[6] regarding Lark's financial problems and requested a reduction on the guarantee rental payments." On cross-examination, Schinella makes reference to "the change [in rent] that they [Lark] had requested because of their financial situation." (Transcript, May 21, 1996, p. 71). Specifically, Schinella testified that "Mr. Meyer made contact and explained that the company was having financial problems, and he requested a reduction in rent because they can't afford the properties." (Transcript, May 21, 1996, p. 74). Based on the evidence, again, this finding of fact is not clearly erroneous. CT Page 12791
Lark's exceptions to findings of fact numbers 17 and 21 are essentially the same: that in 1986 the subject property was owned by One Sylvan and not Lark, and therefore the findings of fact referring to Lark's efforts to sell the property are incorrect. The attorney trial referee declined to modify either finding of fact, because Lark had an option to purchase under the 1986 lease, which includes Lark's right to exercise that option and thereby sell or lease the property. Thus, findings of fact 17 and 21 do not contain any fact that is clearly erroneous, and therefore the court should accept both findings of fact.
Lark raises an exception to Finding of Fact No. 25 on the ground that it is incomplete as corrected. The corrected Finding of Fact No. 25 states: "Later, when the two $28,000 checks for November 1992 and December 1992 guaranteed rental payments became stale, they were returned by One Sylvan to Lark, requesting reissuance of new checks that were no longer outdated (although Lark never signed the written acknowledgment to evidence same — Exhibit 9)." Specifically, Lark claims that it never agreed to One Sylvan's request for re-delivery of the guarantee payments for November and December of 1992. In essence, Lark is asking the court to make an additional finding of fact. However, Lark has failed to demonstrate what evidence supports its position that it did not agree to One Sylvan's request. Therefore, Lark's exception to corrected Finding of Fact No. 25 does not fall within the confines of Practice Book § 439, as the exception does not encompass a material fact that has been found without evidence, an admitted or undisputed fact, or a fact found in such doubtful language that its real meaning does not appear.
Lark raises an exception to Finding of Fact No. 32 on the ground that both parties, and not just Lark, sought to re-negotiate their positions, as evidenced by a letter subsequently admitted into evidence as Plaintiff's Exhibit 3. Finding of Fact No. 32 states: "Lark sought to re-negotiate the amount of guaranteed rental payments coming due on or after January 1993." This exception does not relate to a material fact. In addition, the finding is supported by evidence received at trial, and is therefore not clearly erroneous. (Plaintiff's Exhibit 7).
Lark raises exceptions to Findings of Fact Nos. 36 and 37 as corrected, based on the ground that they are incomplete because they do not include One Sylvan's request for Lark's written acceptance. Finding of Fact No. 36 states: "As part of those negotiations, One Sylvan sought the re-issuance of the November CT Page 12792 and December 1992 $28,000 checks which had become stale. (Exhibit 9)." Finding of Fact No. 37 as corrected states: "One Sylvan returned the stale November and December 1992 guaranteed rental checks of $28,000 each with its May 13, 1993 letter to Donald Meyer of Lark (Exhibit 9), seeking issuance of new checks that were not outdated, and seeking Lark's acknowledgment on said letter (which was not forthcoming)." The court believes that these findings of fact are supported by the contents of Plaintiff's Exhibit 9 and are not of doubtful meaning.
Lark raises an exception to Finding of Fact No. 47, which states: "The Modification Agreement nowhere sets forth the amount of the outstanding arrearage that was to be paid by the terms of the document at the time of its execution and delivery, so as to establish how much of a balance there would be after a partial payment." Lark takes exception to this finding based on several arguments, which were previously rejected by the attorney trial referee, who found that there was no stated figure as to the amount of arrearage. The court's review of the evidence shows that the modification agreement did not contain a specific arrearage amount, but only that Lark's payment obligation to One Sylvan in respect to annual rent was to be an annual sum of $450,000, broken into monthly installments of $37,500. (Plaintiff's Exhibit 10, p. 2).
Lark raises an exception to Finding of Fact No. 52 based upon specific excerpts of testimony by Schinella. Finding of Fact No. 52 states: "Prior to the October 14, 1993 Attorney Robbins' letter to Attorney Tweedy (and Attorney Tweedy's response thereon), Mr. Meyer of Lark spoke with Mr. Schinella of One Sylvan and confirmed that the amount of the delinquent rent [was] to include the two months of 1992 rent and the accrued 1993 rent, for a total of $431,000." Lark's approach of raising an exception based on isolated testimony ignores the totality of the trial testimony, as well as other trial exhibits, and the demeanor and credibility of the witnesses. By failing to take into account the credibility and demeanor of the witnesses, or to weigh all of the evidence, the court concludes that Lark has failed to show that the attorney trial referee's finding of fact was clearly erroneous.
Lark raises an exception to Findings of Fact Nos. 54, 55 and 63-67, essentially on the ground that the attorney trial referee misinterpreted the meaning or import of certain trial exhibits. Lark also seeks to have additional facts added to these findings CT Page 12793 of fact. Upon review of Plaintiff's Exhibits 12, 13, 15, 16, 17, 18, 22, 25 and 27 and the supporting evidence, the court concludes that the findings of fact are not clearly erroneous and should not be disturbed.
Lark raises an exception to Finding of Fact Nos. 73 and 75, arguing that they are of doubtful meaning, are otherwise not justified and are without sound basis. Finding of Fact No. 73 states: "While Mr. Meyer did not specify that he would be paying $56,000 for the November and December 1992 unpaid guarantee rent, Mr. Schinella did specify that the remaining balance of the arrearage was $131,000 and Mr. Meyer did not contradict that." Finding of Fact No. 75 states: "Michael Schinella (on behalf of One Sylvan) believed that when One Sylvan signed the agreement for the Reach lease and the Second Modification, that One Sylvan was going to get paid the delinquent rent in full." Findings of Fact Nos. 73 and 75 are based upon the testimony of Schinella.[7] (Transcript, June 7, 1996, pp. 18-19). As they are based upon evidence adduced at trial, they are justified and have been found with sound basis. Additionally, the findings of fact are not of doubtful meaning, but convey the meaning and significance of the testimony adduced at trial.
Lark raises exceptions to Findings of Fact Nos. 54, 55, 63-67, 76, 80, 83 and 84 on virtually identical grounds. Lark argues that each finding is of doubtful meaning to the extent it suggests there was a duty or obligation on the part of Lark to respond to or confirm an outstanding balance that included an additional sum of $56,000. Lark further argues that each finding of fact misstates the evidence by failing to point out that Lark did not accept or confirm any request for additional payment that included $56,000. It appears to the court that these findings of fact do not misstate the evidence, since none of the evidence specifically establishes that Lark refuted in any affirmative manner that the arrearage balance would not include the $56,000. Further, there is nothing in the exhibits Lark relies on (Plaintiff's Exhibits 11, 12, 23, 24 or Defendant's Exhibit L) or in other exhibits which establishes that One Sylvan accepted Lark's position that the $56,000 would not be included in the balance. (Plaintiff's Exhibits 12, 13, 15, 16, 17, 18, 22, 25 and 27).
Lark raises exceptions to Findings of Fact Nos. 85, 90, 91, 92, 93, 94, 95, 103, 104, 105, 107, 108 and 109. Lark seems to base these exceptions on a re-argument of and alternative CT Page 12794 interpretation of evidence presented. For example, Finding of Fact No. 89 states: "The phone conversation ended with no agreement and Mr. Schinella hanging up on Mr. Meyer." This Finding of Fact No. 89 is clearly supported by trial testimony. (Transcript, June 7, 1996, p. 6). Further, it appears from reviewing Lark's motion to correct and its exceptions to these findings that Lark is attempting to substitute its own version of the facts for those found by the referee, a practice discountenanced in Argentinis v. Gould, 23 Conn. App. 9, 19,579 A.2d 1078, rev'd on other grounds, 219 Conn. 151, 592 A.2d 375
(1991). Thus, Lark has failed to prove that these findings of fact are clearly erroneous and, therefore, they should not be disturbed.
Lark raises an exception to corrected Finding of Fact No. 106, which states: "One Sylvan commenced a summary process proceeding against Lark dated April 6, 1994, alleging the defaults in rent for February 1994, and in the second count, alleging violations of the Modification Agreement and Second Modification Agreement (specifically referencing the failure to pay rent in accordance with Article 3 of the Modification Agreement and other defaults. (Exhibit M))." The court holds that Finding of Fact No. 106 contains no clearly erroneous fact, and is based on Exhibit M of Lark's own Answer, Affirmative Defenses and Counterclaim.
Lark further raises four additional exceptions to facts not found by the attorney trial referee. Exception 1 states: "Lark would not have entered into the Modification Agreement unless the agreement preserved Lark's right to the option to purchase the property." The additional Finding of Fact No. 119 in the attorney trial referee's Decision on Motion To Correct more accurately conveys the purported meaning of Plaintiff's Exhibit 15, a letter from Donald Meyer to Charles Willinger, Esq., attorney for One Sylvan, and so the court should not find an additional fact.[8]
Exception 2 states: "The general decline in the real estate market after 1986 caused and encouraged plaintiff to act in a way so as to find Lark in default under the lease agreement and guarantee, as modified." The court believes that additional Finding of Fact No. 120 in the attorney trial referee's Decision on Motion To Correct more accurately conveys the meaning of the trial testimony, and so the court should not find an additional fact.[9] (Transcript, May 21, 1996, pp. 79-81; May 22, 1996, pp. 19-20, 69-70). CT Page 12795
Exception 3 states: "Plaintiff is a partnership familiar and knowledgeable with respect to (i) the real estate market, (ii) the purchase and sale of commercial properties, and (iii) the leasing, guarantee and maintenance of commercial space, including the negotiations of lease agreements and related documents concerning commercial space." Apart from the fact that the plaintiff was a partnership, these additional facts are not supported by the supporting transcript reference given by Lark. In effect, Lark seeks this court to make further findings of fact, which is a practice not allowed by the pleading rules. "The trial court may not find facts when those facts [have] not been placed before the referee." Jacobs v. Healy Ford-Subaru, Inc.,231 Conn. 707, 730, 652 A.2d 496 (1995), citing Wixner v. Wixner,154 Conn. 703, 704, 371 A.2d 807 (1966) (in cases where the court hears no evidence it should not make a finding).
Exception 4 states: "Counsel to plaintiff made an admission to the Court that point 4 contained in Exhibit 9, which concerns the request on behalf of plaintiff made in May 1993 that Lark re-issue checks in the amount of $56,000 for November and December 1992 guarantee obligations, was not included in the Modification Agreement dated October 4, 1993." It appears to the court that additional Finding of Fact No. 122 in the attorney trial referee's Decision on Motion To Correct more accurately conveys the actions of One Sylvan's attorney, and so the court should not find an additional fact. (Transcript, May 22, 1997, p. 7).[10]
 C. Lark's Objections To The Attorney Trial Referee's Report
"A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted." Practice Book § 440. "Section 440, however, cannot be used to attack findings of fact." Iroquois Gas TransmissionSystem v. Mileski, 43 Conn. App. 47, 52, 682 A.2d 140, cert. denied, 239 Conn. 936, 684 A.2d 707 (1996). "The trial court is authorized to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee . . . . In a matter heard before an attorney trial referee, the trial court's nondelegable judicial duty to render judgment turns on its ability to determine the facts found by the CT Page 12796 attorney trial referee." (Citations omitted; internal quotation marks omitted.) National Elevator Industry v. Scrivani,31 Conn. App. 728, 732, 626 A.2d 1332 (1993), rev'd on other grounds,229 Conn. 817, 644 A.2d 327 (1994). "Where legal conclusions are challenged, [the court] must determine whether they are legally and logically correct and whether they find support in the facts found by the referee . . . . Where evidence is in conflict, its probative force is for the trier of fact to determine." (Citation omitted.) Bernard v. Gershman, 18 Conn. App. 652, 656,559 A.2d 1171 (1989). In addition to determining whether "there was . . . evidence to support the attorney trial referee's factual findings," the task of the reviewing court is to decide whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. Morningside Gardens, Co.,23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied, 217 Conn. 811,587 A.2d 153 (1991). See also State Bank of Westchester v. NewDimension Homes of Connecticut, Inc., 38 Conn. App. 491, 497,661 A.2d 119 (1995) (any legal conclusions reached by an attorney trial referee have no conclusive effect).
1. Integration of the Written Agreement
Lark argues that the lease agreement and guarantee, as modified, constitute a fully integrated agreement, and so One Sylvan's attempt to add specific terms that were discussed in negotiations, but which failed to become part of the written modifications, must be rejected.[11] Lark argues that both parties were at all times represented by counsel, were experienced business people, and unequivocally expressed in writing the desire for the written agreements between them to be fully integrated and final in all respects. Lark further argues that during negotiations surrounding the first modification agreement, One Sylvan sought in writing to obtain rent payments for November and December of 1992 totaling $56,000, but that Lark expressly declined to commit to a balance including this sum. The fact that the second modification agreement is silent on the issue of the $56,000, Lark argues, should be deemed an abandonment or excision of One Sylvan's requests for the $56,000. Finally, Lark argues that One Sylvan cannot raise, as an exception to the parol evidence rule, an argument that it was fraudulently induced into signing either modification agreement, since One Sylvan has not alleged any claim of fraud, illegality, duress, mistake, lack of consideration or other invalidating cause in its pleadings, and no evidence of fraud was offered at trial. In short, Lark argues that the modification agreements CT Page 12797 superseded and extinguished any oral agreement arising subsequent to the initial lease agreement, because the modification agreements extinguish rights that may have previously existed but are not incorporated therein.
One Sylvan responds by arguing that the attorney trial referee's conclusion that the modification agreements were not final agreements is legally correct. One Sylvan's position is that the attorney trial referee justifiably found that Lark failed to make full payment of the arrearage at the time of execution as required by the first modification agreement, and that both modification agreements were silent as to the amount of arrearage to be paid, leading to the conclusion that the modification agreements were not integrated. One Sylvan argues that it was legally permissible for the attorney trial referee to refer to oral agreements made at or after the execution of the modification agreements, since the amount of accrued rent could not be determined from the four corners of the modification agreements themselves. One Sylvan further argues that in enforcing the modification agreements, which provide that all accrued rent be paid, the attorney trial referee was faced with the question of what the parties intended by putting "accrued" rent in the first modification agreement, particularly in light of the admission of the parties that all accrued rent was in fact not paid. As a result, One Sylvan argues, the attorney trial referee was justified in referring to the surrounding circumstances.
"The parol evidence rule prohibits the use of extrinsic evidence to vary or contradict the terms of an integrated written contract." (Internal quotation marks omitted.) Foley v.Huntington Company, 42 Conn. App. 712, 733, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). "The rule does not forbid the presentation of parol evidence, but prohibits the use of such evidence to vary or contradict the terms of the contract." Id. "All relevant evidence is admissible on the issue of contract interpretation, and [a]ny determination of the meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties . . . ." (Internal quotation marks omitted.) Id., 733-34.
The court believes the oral agreement entered into by the CT Page 12798 parties is not barred by the parol evidence rule. The parol evidence rule forbids the presentation of evidence outside the four corners of the contract to vary or contradict the written terms of an integrated contract. Tie Communications, Inc. v.Kopp, 218 Conn. 281, 287, 589 A.2d 329 (1991). Such evidence may be considered where it has been shown that the contract is not integrated.[12] Id., 287-288. "Whether the written contract was actually the final repository of the oral agreements and dealings between the parties depends on their intention, evidence as to which is sought in the conduct and language of the parties and the surrounding circumstances."[13] Associated CatalogMerchandisers, Inc. v. Chagnon, 210 Conn. 734, 739, 557 A.2d 525
(1989). "The parol evidence rule does not apply, however, if the written contract is not completely integrated." Lester v. ResortCamplands International, Inc., 27 Conn. App. 59, 65, 605 A.2d 550
(1992). The question of whether a written contract is integrated is a preliminary question of fact to be determined by the trial court. Id. "The trial court's determination of intent is not reviewable unless the conclusion drawn is one that cannot be reasonably made." (Internal quotation marks omitted.) Id.
The court finds that the parties did not intend that the modification agreements completely embody all their agreements. There is ample evidence that although the modification agreements recited that they were to embody all of the parties' intentions, a contemporaneous oral agreement was established in October of 1993. This oral agreement established that Lark would not have to abide by the terms of the very contract it had just entered into, because Lark was unable to perform its obligations of paying upon execution all delinquent rent. (Plaintiff's Exhibits 11, 12, 13, 16, 18, 22 and 24). Rather than paying all delinquent rent upon execution, Lark paid $300,000, only a portion of the delinquent rent, in contravention of the first modification agreement. It is therefore apparent that the modification agreements were not the final repository of the parties' oral agreements and dealings. The modification agreements were thus not integrated and therefore the attorney trial referee did not err in looking to parol evidence to uncover the intentions of the parties.
2. The Statute of Frauds
Lark argues that the June 1992 oral agreement is unenforceable under the Statute of Frauds, found at General Statutes § 52-550,[14] which applies to interests in real property. Lark argues that it never occupied the leased premises, CT Page 12799 that the oral agreement could not be completed within one year, and that the oral agreement violates the Statute of Frauds for lack of a sufficient writing. Furthermore, there is no signed writing evidencing the obligation on its part to pay the $56,000 rent owed. Lark also argues that the doctrine of part performance does not remove the oral agreement from the Statute of Frauds, because One Sylvan has failed to demonstrate any detrimental reliance on its part, or any payments made by Lark in connection with the $56,000.
One Sylvan argues that the part performance exception is applicable to this case. One Sylvan contends that Lark's performance was referable to and consistent with the oral agreement to pay $28,000 per month through December of 1992, as evidenced by the checks in that amount received by One Sylvan, subsequent correspondences, and the testimony at trial. One Sylvan further argues that it did rely on the oral agreement to its detriment, since it agreed not to pursue its legal remedies against Lark for non-payment based on Lark's agreement to make the $28,000 payments from July 1992 through December 1992.
"The statute of frauds requires contracts for the conveyance of realty to be in writing." McNeil v. Riccio, 45 Conn. App. 466,470, 696 A.2d 1050 (1997). "[A] contract is enforceable, despite the statute, when, subsequent to the making of the contract, there has been conduct that amounts to part performance." Id. "[T]he acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties . . . . The acts must also be of such a character that they can be naturally and reasonably accounted for in no other way than the existence of some contract in relation to the subject matter in dispute . . . ." (Citations omitted; internal quotation marks omitted.) Id. It must be shown that "the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can only be avoided by specific performance." (Internal quotation marks omitted.) Id., 741. "Whether these actions constituted part performance was a factual determination to be made by the trial court." Milazzo v. Schwartz, 44 Conn. App. 402,407, 690 A.2d 401, cert. denied, 240 Conn. 926, 692 A.2d 1282
(1997). CT Page 12800
The evidence shows that One Sylvan agreed to lower the rent from $42,500 to $28,000 per month based on Lark's representations that it was having financial difficulty. (Transcript, May 21, 1996, pp. 31-32). The evidence further shows that based on Lark's representation that it would pay $28,000 per month through December of 1992, One Sylvan did not exercise its right to evict Lark, although Lark's agreed-to rental payments had often been late up to that time. (Transcript, May 21, 1996, pp. 21, 32; Plaintiff's Exhibits 3, 4). "The statute of frauds was never intended to be used to permit one relying on it to enrich himself at the expense of another or to aid in defrauding such other person. To permit a party to an oral contract to accept the benefits of such contract and then invoke the statute to avoid payment would be using the statute to perpetrate a fraud."Barrett Builders v. Miller, 215 Conn. 316, 330-31, 576 A.2d 455
(1990). The court finds that the conduct of One Sylvan in not evicting Lark despite delinquent payments and the actions of Lark in issuing checks in the amount of $28,000 for rent payments beginning in July of 1992, despite the terms of the written 1986 lease, takes the parties' oral contract out of the statute of frauds. Also, it appears to the court that One Sylvan relied to its detriment on Lark's promise to pay One Sylvan monthly rent in the amount of $28,000 by not exercising its right to evict Lark. Therefore, Lark should not be allowed to benefit from the oral contract, whereby the monthly rent was lowered to accommodate Lark, and then to argue that the contract never existed.
3. Count Two — Equitable Estoppel
Lark raises an objection to the attorney trial referee's conclusion that One Sylvan's claim of equitable estoppel is valid. Lark argues that it had no duty or obligation to agree to a re-payment of $56,000 after the parties signed the modification agreement, and that the parties agreed by signing the modification agreement that re-payment of the $56,000 would not be made. Lark argues that it engaged in no misleading conduct, that One Sylvan was not prejudiced, and that One Sylvan was not reasonable in its belief that there would be such a re-payment, because Lark never agreed to make any such re-payments.
One Sylvan argues that the attorney trial referee correctly applied the elements of equitable estoppel, as One Sylvan relied on the agreement that Lark would pay all accrued rent assessments. One Sylvan argues that Lark led One Sylvan into CT Page 12801 expecting that the $56,000 would be included in that amount by never objecting to the request by One Sylvan to pay that amount, and by agreeing to pay that amount. One Sylvan argues that it relied on Lark's silence concerning the payment of the $56,000 as an agreement that it would be included in the category of accrued rent under the modification agreement.
"[E]stoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." Boyce v. Allstate Ins.,236 Conn. 375, 385, 673 A.2d 77 (1996). "Estoppel rests on the misleading conduct which results in prejudice to the other and absent such prejudice an estoppel cannot exist." (Internal quotation marks omitted.) Middletown Commercial Associates Ltd.v. City of Middletown, 42 Conn. App. 426, 442, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996). "Moreover, it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Internal quotation marks omitted.) Boyce v. Allstate Ins., supra,236 Conn. 385-86.
Schinella was told by Meyer that Lark "was going to live up to the [first] modification agreement and he [Meyer] was going to pick up all the delinquent rents as of the execution of this agreement." (Transcript, May 21, 1996, p. 70). Schinella testified that the second modification agreement was the result of correspondences from One Sylvan to Lark, and the reliance of One Sylvan on Lark to pay all outstanding delinquent rent. (Transcript, May 22, 1996, p. 2). Schinella further testified that One Sylvan relied on Meyer's word to pay all delinquent rent, and Meyer's word that it would be paid upon execution of the first modification agreement. (Transcript, May 22, 1996, p. 6). When pressed on why the first modification agreement did not refer explicitly to the $56,000 rental payments, despite letters from One Sylvan insisting that this amount was due, Schinella testified that "Meyer always stated that he would pay all the delinquent rents, including November and December '92, up through the date of the modification agreement." (Transcript, May 22, 1996, p. 7). Although Lark was unable to deliver all of the delinquent rent upon the signing of the first modification CT Page 12802 agreement, Schinella testified that One Sylvan accepted the partial payment with the understanding that the balance would be forthcoming. (Transcript, May 22, 1996, p. 13). Schinella testified that Meyer informed him that the remainder of the money owed would be coming. (Transcript, May 22, 1996, p. 43). Schinella further testified that he made clear to Meyer what the remaining delinquent rent was after Lark sent One Sylvan a check for $300,000, and that Meyer did not challenge the amount quoted by Schinella. (Transcript, June 7, 1996, p. 16). Schinella also testified that Meyer acknowledged the amount due that Schinella quoted to him. (Transcript, June 7, 1996, p. 19). Schinella testified that he expected to receive this amount, because he was under the assumption that when the parties signed the second modification agreement, One Sylvan would receive all of the delinquent rent in full. (Transcript, June 7, 1996, p. 21). In addition, Meyer signed a letter indicating that upon execution of the first modification agreement, the monthly rent amount due November 1, 1993 would be paid, and the outstanding balance for 1993 pursuant to the first modification agreement would be paid as soon as possible. (Plaintiff's Exhibit 11). Finally, Schinella testified that One Sylvan would not have signed either of the modification agreements had he known Lark would fail to make payment on all delinquent rent, including that for November and December of 1992. (Transcript, May 22, 1996, p. 39).
Based on the above, it is apparent that One Sylvan exercised due diligence in inquiring whether Lark would pay what One Sylvan believed was the outstanding balance. Boyce v. Allstate Ins.,
supra, 236 Conn. 387. It is also clear that One Sylvan has met its burden of proving that Lark led it to believe that upon the signing of the modification agreements, all delinquent rent, including the $56,000, would be paid. It appears to the court that through reasonable reliance on these representations, One Sylvan entered into the modification agreement, to its detriment.
 4. Lark's Special Defenses — Waiver; Discharge; Ratification; Accord and Satisfaction
Lark argues that One Sylvan has waived any right to the November and December rent payments. It argues that the lease agreement and guarantee, as modified, establish waiver as a matter of law. Lark also argues that One Sylvan's conduct in accepting the $300,000 partial payment from Lark and delivering the signed first modification agreement, rather than waiting for the full amount of delinquent rent, constituted a waiver. CT Page 12803
One Sylvan argues that there is no evidence to support the proposition that it intended to relinquish the right to collect the $56,000. One Sylvan also makes reference to exhibits offered as evidence wherein it expressly stated its position that it was not waiving its right to collect the $56,000 by virtue of its acceptance of the $300,000 check from Lark.
"Waiver is the intentional abandonment of a known right."Soares v. Max Services Inc., 42 Conn. App. 147, 175, 679 A.2d 37, cert. denied, 239 Conn. 915, 682 A.2d 1005 (1996). "Waiver is the voluntary relinquishment of a known right. It involves the idea of assent, and assent is an act of understanding . . . . Intention to relinquish must appear, . . . ." (Internal quotation marks omitted.) Id. "Waiver is a question of fact for the trier." Id.
It appears to the court that One Sylvan did not waive its right to the $56,000 rental amounts for November and December of 1992. As discussed supra, the signing of the modification agreements did not obviate Lark's responsibility to pay delinquent rent, including the $56,000 for November and December of 1992. Because the modification agreements were not integrated, it is permissible to look to parole evidence to fill in the missing term of the first modification agreement in order to determine what rent had "accrued" under both the first and second modification agreements. Evidence was adduced which supports the conclusion that One Sylvan did not waive its right to the $56,000. Schinella testified that he called Meyer and told Meyer that he did not understand why Lark was not sending to One Sylvan a check for the complete amount of delinquent rent as agreed upon. (Transcript, May 22, 1996, p. 38). Schinella testified that he was informed by Meyer that Lark would like One Sylvan to forego the $56,000, considering all of the rent Lark had paid up to that time. (Transcript, May 22, 1996, p. 38). When Schinella inquired of Meyer whether Lark intended not to pay that amount, Meyer again informed Schinella that Lark would like one Sylvan to forego that amount. (Transcript, May 22, 1996, pp. 38-39). Upon a second inquiry of whether Lark intended not to pay the $56,000, Meyer repeated the same answer, whereupon Schinella hung up the telephone. (Transcript, May 22, 1996, 39; June 7, 1996, pp. 5-6). In addition, exhibits were received into evidence which demonstrate that One Sylvan never intended to waive its right to the $56,000 rental payments as part of the total of delinquent rent to be paid by Lark. (Plaintiff's Exhibits 8, 13, 18, 22, 25, CT Page 12804 27; Defendant's Exhibits D, E, G). Based upon the overwhelming evidence, the court finds that One Sylvan never intended to relinquish the right it had to payment of rent for November and December of 1992 in the amount of $56,000.
Lark claims that it is entitled to assert the special defense of discharge, arguing that One Sylvan discharged Lark from paying the $56,000 by signing the modification agreements and by accepting payment from Lark. Lark argues that the modification agreements created a new agreement between the parties, which extinguished the parties' prior obligations under the 1986 lease and guaranty, except as those obligations were expressly preserved. As a result, Lark argues, the modification agreements supersede and extinguish any oral agreements that existed in June and July of 1992 for the payment of the $56,000, and so that debt is discharged. By contrast, One Sylvan argues that the attorney trial referee was correct in concluding that the modification agreements preserved the payment of the $56,000, because those documents refer to accrued rents to be paid.
"As a general rule, when the new contract is in regard to the same matter and has the same scope as the earlier contract and the terms of the two are inconsistent either in whole or in substantial part, so that they cannot subsist together, the new contract abrogates the earlier one in toto and takes its place . . . ." Riverside Coal Co. v. American Coal Co.,107 Conn. 40, 47, 139 A.2d 276 (1927). In determining whether a substituted contract exists, the court looks to the language used by the parties; id., 45; as well as attendant circumstances which might notify the party seeking the discharge that the other party is retaining rights under the former contract. Id., 47. "A course of conduct may not only indicate the intent of the parties for the purpose of interpreting ambiguous language in a contract . . . but also evince a subsequent modification of a contract or an abrogation of specific contract terms." (Citation omitted.) MayCenters, Inc. v. Paris Croissant of Enfield Square, Inc.,42 Conn. Sup. 77, 81, 599 A.2d 507 (1991).
The language of the modification agreements refers to accrued rent, which does not make clear whether the $56,000 at issue is thereby included. Consequently, the attorney trial referee was allowed to look at parol evidence in an attempt to determine the intent of the parties which, as discussed, demonstrates that One Sylvan intended the $56,000 to be included under the accrual amount. Furthermore, since the modification agreements were CT Page 12805 incomplete, Lark's obligation to pay the $56,000 was not automatically discharged by the signing of the subsequent modification agreements, because One Sylvan manifested an intent to carry over the November and December 1992 rental debt into the first modification agreement. Further, it appears that the fact that the modification agreements do not spell out the $56,000 as a specific amount owed becomes immaterial, because no amounts are spelled out concerning delinquent rents, all of which are referred to as "accrued." The court believes the evidence produced at trial indicates what the parties intended by the use of the word "accrued" in the first modification agreement, and as outlined above, One Sylvan consistently demonstrated its belief that the $56,000 was included in the total amount of delinquent rent under the accrual clause.
Lark argues that because One Sylvan accepted the $300,000 partial payment from Lark and signed the modification agreements with full knowledge of their contents, One Sylvan ratified the contract as modified. One Sylvan argues that ratification is not applicable to the factual circumstances of this case as it is predominately a principle of agency law.
"As a general rule, [r]atification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account. Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances." (Citation omitted; internal quotation marks omitted.) Community Collaborative of Bridgeport, Inc. v. Ganim,241 Conn. 546, 561, 698 A.2d 245 (1997). "In order to ratify the unauthorized act of an agent and make it effectual and obligatory upon the principal, the general rule is that the ratification must be made by the principal with a full and complete knowledge of all the material facts connected with the transaction to which it relates . . . ." (Internal quotation marks omitted.) Id. "[S]ilence, as well as affirmative acts, may imply an intent to ratify." Id., 561-62. "The nature and extent of an agent's authority is a question of fact for the trier where the evidence is conflicting or where there are several reasonable inferences which can be drawn." (Internal quotation marks omitted.) Id., 562. "Since ratification in a given case depends ultimately upon the intention with which the act or acts, from which ratification is claimed, were done, and since intention is a mental fact and its finding clearly one of fact, the finding in a given case of ratification is one of fact and not reviewable unless the CT Page 12806 conclusion of ratification, drawn from the facts, is plainly erroneous." (Internal quotation marks omitted.) Id.
The modification agreements were signed after negotiations by Alfred Lenoci Sr. on behalf of One Sylvan.[15] (Transcript, May 21, 1996, p. 61). Lenoci signed the agreement over the designation "general partner." The court finds that Lenoci acted as an agent for One Sylvan when signing the agreements, and that One Sylvan knowingly ratified the agreements by accepting partial payment of the delinquent rent.[16] However, One Sylvan ratified the agreements which called for the payment of all delinquent rents accrued. Based upon the evidence produced at trial, therefore, One Sylvan would not have accepted the partial payment of delinquent rent with the intention of waiving its right to the remainder of the delinquent rent. Although it is apparent that One Sylvan did ratify the modification agreements, such ratification did not prevent One Sylvan from seeking the payment of the $56,000, since such amount was to be included in the accrued rent called for under the agreements.
Next, Lark argues that by accepting the $300,000 check from Lark, One Sylvan accepted the check in satisfaction of any possible remaining debt connected to the outstanding rents for November and December 1992. Lark argues that rather than depositing the check for $300,000, One Sylvan should have returned it under protest. One Sylvan argues that because there was no meeting of the minds, an accord and satisfaction agreement was not possible, and the attorney trial referee was correct in not recognizing such a defense.
"An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty." (Internal quotation marks omitted.) Tolland Enterprises v.Scan-Code, Inc., 239 Conn. 326, 333, 684 A.2d 1150 (1996). "[W]hen there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim . . . . Without a mutual assent, or a `meeting of the minds,' there cannot be a valid accord." (Citations omitted; internal quotation marks omitted.) Munroe v.Emhart Corp., 46 Conn. App. 37, 42, 699 A.2d 213 (1997). "To prove an accord and satisfaction, the defendant must show that at the time of the agreement there was a good faith dispute over the existence of a debt or over an amount owed, and that the debtor CT Page 12807 and the creditor negotiated a contract of accord to settle the claim." Id. "The accord must be a new agreement based on new consideration." Id. "The proponent must be able to show that there was a meeting of the minds, and that the offer by the debtor was clearly tendered as full satisfaction of the debt and that the payment was knowingly accepted." Id., 42-43. "The cashing . . . of a check expressly sent in full settlement of adisputed claim, operates as an accord and satisfaction . . . ." (Citation omitted; internal quotation marks omitted.) Id., 44.
In this case, however, Lark's check was neither tendered in full satisfaction of Lark's debt to the plaintiff nor tendered on condition of the terms contained in the letter that accompanied the check. The check, by Lark's own admission, was tendered as apartial payment of the debt owed to the plaintiff. Moreover, the letter that accompanied the check merely stated Lark's understanding of the parties' purported settlement agreement, and neither the letter nor the check conditioned acceptance of the check on the terms contained in the letter. Because conditions necessary for a valid accord have not occurred, Lark's claim of accord and satisfaction premised on the plaintiff's cashing of the check must fail.
Therefore, no accord and satisfaction took place here, where One Sylvan and Lark never agreed that the partial payment tendered at the signing of the first modification agreement would satisfy the entire outstanding balance of rent owed. (Plaintiff's Exhibits 12, 13, 16, 18, 22). This is clearly shown by a letter dated December 15, 1993, wherein One Sylvan advised Lark that a Lark check in the amount of $88,125 did not cover the $131,000 in arrearages remaining after Lark's tender of the $300,000 check. One Sylvan clearly expressed its intention to pursue payment of the $56,000 for November and December of 1992 rent, and stated unequivocally that the acceptance of the $88,125 check "in no way constitutes a waiver of the November and December 1992 rent." (Plaintiff's Exhibit 25). Thus, the check tendered by Lark was neither the amount agreed to by both of the parties nor accepted as full satisfaction of the debt by One Sylvan. (Plaintiff's Exhibit 27).
5. Lark's Counterclaim
Lark argues that due to decreases in property valuation, One Sylvan set out on a course of conduct directed towards finding Lark in default of its obligations, thereby terminating Lark's CT Page 12808 option to purchase the property in 1995 at a price far less than One Sylvan paid in 1986. Lark claims further that One Sylvan wrongly found Lark in default for failing to pay the $56,000 November and December 1992 rent when One Sylvan refused Lark's tender of rent for February 1994. Lark argues that because it was not obligated to pay the $56,000, there was no default. Furthermore, One Sylvan had accepted rent payments from Lark for December 1993 and January 1994, and that once Lark tendered the February 1994 payment in full, its duty under the lease was discharged and One Sylvan was foreclosed from claiming any breach by nonpayment of that amount. Lark also argues that One Sylvan had a duty to allow Lark to perform under the lease, and by preventing Lark from doing so, One Sylvan breached the agreement. Lark further argues that it is entitled to attorney's fees, as set forth in the counterclaim.
One Sylvan argues that the attorney trial referee made a factual finding based on the evidence that Lark had an obligation to pay the $56,000, and so One Sylvan did not wrongfully find Lark in default. One Sylvan also argues that Lark has failed to show that by executing a "Second Rider to Contract Made as of May 19, 1995," it did not release the breach of contract claim brought in the counterclaim. One Sylvan argues that as a result, Lark has failed to state a claim upon which relief may be granted.
"A tender must be unconditional and unqualified." HartfordFederal Savings Loan Assn. v. Tucker, 196 Conn. 172, 181,491 A.2d 1084 (1985) (trial court's finding of no legal tender was made not clearly erroneous where defendant's offer was conditioned on plaintiff's acceptance of less than the full amount of debt for a full release of mortgages and on an agreement by plaintiff to discharge the rent receiver). "It is the universal rule that a tender upon condition for which there is no foundation in the contractual relation between the parties is ineffective . . . . But where the condition is one which a debtor has the right to insist upon, a tender made subject to that condition is valid." Kuhn v. Sadinsky, Superior Court, judicial district of New London, Docket No. 523165 (March 4, 1994, Healy, S.T.R), quoting 52 Am.Jur.2d Tender 24.
Because the February 1994 rental payment was late and based upon unfounded conditions, One Sylvan was within its rights to find Lark in default. One Sylvan accepted the January 1994 rent payment while notifying Lark that the $56,000 had not yet been CT Page 12809 received. (Defendant's Exhibit D). One Sylvan advised Lark that it would continue to accept rental payments after January 1994, but that it would do so without waiving its rights to the outstanding balance remaining of $56,000. (Defendant's Exhibit D). In a letter dated February 16, 1994 from One Sylvan to Lark, One Sylvan outlines three grounds of Lark's default of the lease agreement: (a) failure to pay rent for November and December 1992; (b) failure to pay rent for February 1994; (c) failure to engage an agreed upon agent for service on Lark in Connecticut. (Defendant's Exhibit E). One Sylvan further informed Lark that it had twenty days to cure the defaults before One Sylvan terminated the lease, (Defendant's Exhibit E). Lark purported to make the February payment by tendering a check, but with four conditions attached. One of those conditions was that One Sylvan would agree that no additional rent was payable by Lark to One Sylvan as of March 7, 1994. (Plaintiff's Exhibit 28). This is an unfounded condition, particularly in light of One Sylvan's consistent claim regarding the $56,000. Accordingly, as Lark, in effect, made no tender of the February 1994 rent due to this unfounded condition, One Sylvan was within its rights to find Lark in default of the lease.
With respect to the claim by Lark for attorney's fees, Lark has failed to state a claim upon which relief can be granted. The parties exchanged mutual releases of all claims except those "(i) claims that relate to the alleged guaranty amounts for the months of November 1992 and December 1992 and attorney's fees and court costs incurred in connection with the two actions pending in the Superior Court for the State of Connecticut between the parties and (ii) any claims (if any) for the breach of any warranties under the deed delivered pursuant to the Closing and/or any other claims (if any) arising out of any breach of the Agreement or this Rider." (Defendant's Exhibit I, p. 8). Lark has shown no reason why its breach of contract claim was not released. Lark offers no argument on this point, and accordingly, it deemed abandoned. Commission on Human Rights Opportunities v. Truelove McLean, Inc., 238 Conn. 337, 344 n. 11, 680 A.2d 1291 (1996) (where an issue is merely mentioned but not briefed, it is deemed to have been waived).
"The general rule of law known as the `American Rule' is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." Rizzo Pool Co. v. Del Grosso, 240 Conn. 58,72, 689 A.2d 1097 (1997). Because Lark cannot prevail on its CT Page 12810 counterclaim, it is not entitled to attorney's fees as a matter of law. Finally, One Sylvan should be awarded attorneys fees as set forth in Part A of this memorandum.
D. Lark's Objections To Conclusions of Fact
"An appellate court reviews conclusions based on subordinate facts found, even if labeled conclusions of fact, to the same extent that it reviews conclusions of law." Murphy v. Buonato,42 Conn. App. 239, 243, 679 A.2d 411 (1996), aff'd, 241 Conn. 319,686 A.2d 320 (1997). "[T]his court's task is to determine whether the conclusions of fact and law by the referee are legally and logically correct and whether they find support in the facts found by the referee." (Internal quotation marks omitted.) Kallasv. Harnen, Superior Court, judicial district of Danbury, Docket No. 303611 (May 10, 1996, Stodolink, J.).
Lark objects to Conclusion No. 1 on the ground that the parties' understanding arising from letters written in July of 1992,[17] wherein the parties manifested their oral agreement to modify Lark's monthly guaranty payment from $42,500 to $28,000, does not supersede the parties' agreements contained in the original lease agreement, both modification agreements, and the final lease agreement. Lark argues that this oral agreement fails the requirement of the 1986 lease agreement that all modifications be signed and acknowledged in writing. Lark also argues that this oral agreement was superseded by the subsequent modification and lease agreements.
The attorney trial referee concluded that the letters exchanged by the parties constituted a modification of the lease agreement as established by the part performance doctrine. Although this is labeled as a factual conclusion by the attorney trial referee, it is more similar to a legal conclusion and will be treated as such.
"A written contract can be modified by a subsequent parol agreement if that is the intention of the parties . . . because the parties to a written contract retain the power to alter or vary or discharge any of its provisions by a subsequent agreement." (Citation omitted; internal quotation marks omitted.)New England Petroleum Corp. v. Groppo, 214 Conn. 444, 450572 A.2d 970 (1990). "It does not make any difference that the original written contract provided that it should not subsequently be varied except by writing. This stipulation itself CT Page 12811 may be rescinded by parol and any oral variation of the writing which may be agreed upon . . . ." (Internal quotation marks omitted.) Id. Therefore, in June and July of 1992, the parties were free to orally modify their agreement, reducing the monthly guaranty payment by Lark to One Sylvan from $42,500 to $28,000 per month. Further, it appears that this oral modification was evidenced by part performance.
"[T]he acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties . . . . The acts must also be of such a character that they can be naturally and reasonably accounted for in no other way than the existence of some contract in relation to the subject matter in dispute . . . ." (Citations omitted; internal quotation marks omitted.) McNeil v. Riccio,
supra, 45 Conn. App. 470. Here, the monthly payment of rent by Lark in the amount of $28,000 and One Sylvan's acceptance of the same, foregoing its right to hold Lark in default, demonstrate that the parties had reached a mutual agreement to reduce the rent. Lark tendered timely monthly rental payments to One Sylvan in the amount of $28,000 from June through October of 1992. (Transcript, May 21, 1996, p. 23). In addition, Lark recognized the payment of $28,000 as the amount of monthly rent due under the agreement.[18] (Plaintiff's Exhibits 6; 7). Finally, as demonstrated by numerous exhibits, One Sylvan never waived its right to the November and December 1992 payments of $28,000 as accrued rent under the subsequent modification agreements and lease. (Plaintiff's Exhibits 4, 12, 13, 16, 18, 22, 25, 27; Defendant's Exhibits D, E, G).
Lark objects to the attorney trial referee's Conclusion No. 2, arguing that One Sylvan's only justifiable reliance in entering into the subsequent modification agreements and lease was to expect all amounts due under the accrual clause of the first modification agreement. Lark further argues that this amount is subject to calculation, and does not include the $56,000 for November and December 1992 rent. The first modification agreement does not contain a total amount of arrearage. (Plaintiff's Exhibit 10). Therefore, Lark's position that a monthly arrearage total could be calculated from the first modification agreement is erroneous. Further, as discussed, supra, in the discussion of the equitable estoppel doctrine, CT Page 12812 there is abundant evidence that One Sylvan justifiably relied on Lark's representations that payment of all rent arrearages would be made upon execution of the modification agreements and the final lease. (Transcript, May 21, 1996, pp. 21, 32; May 22, 1996, pp. 7-8, 10, 14).
Lark argues that Conclusion Nos. 3-4 are in error, because at the time of delivery of the first modification agreement, Lark paid $300,000 with the understanding that the additional amount due would be paid by the end of 1993. Lark argues that since it was required to make monthly payments of $37,500 from January 1, 1993, as of October 1993, when the $300,000 was paid, Lark only owed $75,000 to One Sylvan as rent arrearage.[19] One Sylvan's position is that $131,000 remained outstanding after the $300,000 partial payment. Again, because the modification agreement is silent as to the amount of arrearages that had accumulated as of October of 1993, Lark's assertion that only $75,000 was outstanding at that time has no basis in fact. As the evidence shows, the $56,000 rent from 1992 remained outstanding, and thus should have been figured into the total accrued arrearage amount under the modification agreement. As such, after Lark made what it admitted was only a partial payment of $300,000, the total outstanding balance was $131,000. (Plaintiff's Exhibits 11, 12, 13, 16, 18, 22, 25).
Lark objects to Conclusion No. 5 on the ground that the merger clauses of the modification agreements and final lease are enforceable to preclude One Sylvan's claim to payment of the $56,000, subject to Lark's payment of the balance due under the modification agreement by December, 1993. Lark argues that the amount of rent "accrued" under article 3 of the first modification agreement includes only rents beginning in January of 1993 at $37,500 a month and continuing through October of 1993 when the first modification agreement was executed. Lark argues that this would equal $375,000, of which $300,000 was paid at the execution of the modification agreement and the remaining $75,000 was paid in December of 1993. The evidence, however, supports the conclusion that One Sylvan entered into the modification agreements and final lease based upon Lark's representations that all accrued rent would be forthcoming. In addition, the modification agreements do not define "accrued" rent, One Sylvan consistently expressed its position that the $56,000 was part of the accrued rent as shown by numerous exhibits, and Lark represented that if One Sylvan executed the modification agreements, Lark would pay all accrued rent. CT Page 12813
Lark raises an objection to Conclusion No. 6, arguing that the second modification agreement established a second waiver and merger effective upon One Sylvan. Lark also argues that One Sylvan accepted the terms of the second modification agreement with the understanding that the disputed $56,000 would not be included under the outstanding balance. The court concludes that the second modification agreement did not establish a second waiver and merger. All of the remaining terms and covenants of the prior leases and modification agreement remained in full force and effect. (Plaintiff's Exhibit 20, p. 2, ¶ 1). Because the second modification agreement is silent as to the payment by Lark of accrued rent, it does not affect the terms of the first modification agreement, which calls for Lark to "make all payments of Additional Rent . . . . All amounts which have accrued on account of Annual Rent and Additional Rent have been made prior to or contemporaneously with the execution of this Agreement." (Plaintiff's Exhibit 10).
There is no evidence that One Sylvan executed the second modification agreement with the understanding that Lark would refuse to pay the $56,000. Lark sent to One Sylvan a letter dated October 12, 1993 informing One Sylvan that $300,000 would be paid towards the outstanding rent, and the remainder of the amount due in 1993 would be paid by the end of the year. Plaintiff's Exhibit 11). This letter was silent as to the issue of the $56,000 owed to One Sylvan. (Plaintiff's Exhibit 11). One Sylvan responded with a letter dated October 14, 1993, wherein it reaffirmed its expectation that the $56,000 would be included in the accruals to be paid by the end of 1993. (Plaintiff's Exhibit 12). One Sylvan consistently expressed this position through subsequent letters. (Plaintiff's Exhibits 13, 16, 18). Thereafter, the second modification agreement was executed on November 29, 1993. (Plaintiff's Exhibit 20). Based upon the evidence of the terms of the second modification agreement and the actions of the parties, the court concludes that One Sylvan did not waive its right to the outstanding 1992 rent charges of $56,000 by executing the second modification agreement. All amounts which had accrued as described in the first modification agreement at article 3, including the $56,000, were to be paid upon the execution of the second modification agreement. (Plaintiff's Exhibit 20, p. 2, ¶ 1). Thus, the second modification agreement did not constitute a waiver of the $56,000 in accrued rent.
Lark raises an objection to Conclusion No. 7 on the ground CT Page 12814 that any oral agreement the parties had as to the payment of rent in the amount of $28,000 for November and December 1992 was superseded by the subsequent modification agreements between the parties. As previously discussed, the modification agreements were not fully integrated; therefore, the court could consider parol evidence to determine the intentions of the parties. Based upon the evidence accepted in this regard, the court finds that Conclusion No. 7 is logically based on subordinate facts correctly found.
E. Lark's Objections To Evidentiary Rulings
"In order for an error in an evidentiary ruling to be a reversible error, the court's ruling must be both wrong and harmful." (Internal quotation marks omitted.) Hensley v.Commissioner of Transportation, 211 Conn. 173, 184, 558 A.2d 971
(1989). "When there is a claim of inadmissibility based on irrelevancy, the claimant has the burden of showing that the ruling was both wrong and harmful." Id. An error is considered harmless where other evidence presented sufficiently supported the court's judgment. Connecticut Limousine Service, Inc. v.Powers, 7 Conn. App. 398, 401, 508 A.2d 836 (1986).
Lark objects to the attorney trial referee's decision to admit into evidence Plaintiff's Exhibits 3, 4, 6, 7 and 8, arguing that the exhibits were irrelevant and prejudicial, because the written agreements entered into by the parties prohibited oral modifications and superseded any oral agreement to pay rent in the amount of $28,000 for November and December of 1992. It appears to the court that Lark has failed to carry its burden of demonstrating that the attorney trial referee's ruling on the admission of these documents was both wrong and harmful. In his report, the attorney trial referee gave ample explanation as to his reasoning in admitting these documents into evidence. As discussed elsewhere in this memorandum, the parties could orally modify the terms of the original lease despite clauses preventing oral modification. Further, exhibits reflecting the actions of the parties concerning the payment and acceptance of rent checks during 1992 in the amount of $28,000 were admissible to the extent that One Sylvan laid a foundational claim that the oral modification could be proved through part performance. (Transcript, May 21, 1996, pp. 19-20). Finally, the contents of the documents were relevant in that they assisted the attorney trial referee in interpreting the accrual clause of the subsequent modification agreement, which was not an integrated CT Page 12815 document. For these reasons, the court believes that the documents objected to were relevant and properly admitted at trial. Lark raises objections to numerous rulings by the attorney trial referee concerning the admissibility of questions asked and testimony given during the trial. (Objections To Rulings Nos. 2, 3, 4, 5, 6, 7, 8, 9, 12, 13, 14 and 15). In general, the "standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice . . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness . . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) Eisenbach v. Downey, 45 Conn. App. 165,179, 694 A.2d 1396, cert. denied, 241 Conn. 926, 696 A.2d 1264
(1997).[20] Lark has failed to demonstrate that the attorney trial referee abused his discretion in making the rulings. The attorney trial referee has offered extensive reasoning behind his rulings as to each of these matters, and the court finds that the reasoning as to each was sound and within the attorney trial referee's discretion as the finder of fact. (ATR Decision On Motion To Correct, pp. 36-48).
Lark argues that its motion to dismiss[21] raised during the trial should have been granted, because One Sylvan could not prove that an oral agreement existed covering the payment of rent for November and December of 1992.[22] "A court may find that a plaintiff has failed to make out a prima facie case when the evidence produced by the plaintiff, if fully believed, would not permit the trier in reason to find the essential issues in the complaint in favor of the plaintiff." (Internal quotation marks omitted.) Loiseau v. Board of Tax Review of Suffield,46 Conn. App. 338, 342, 699 A.2d 265 (1997).
The court concludes that the attorney trial referee was correct in denying the motion to dismiss raised on May 22, 1996, as the evidence presented before the motion was made, if fully believed, proved the essential issue of an existing oral contract between the parties. Prior to the motion, there was testimony from Schinella that the outstanding balance of rent owed was $431,000, of which partial payment in the amount of $300,000 was received from Lark by One Sylvan. (Transcript, May 21, 1996, pp. 62-65). Schinella testified that the $431,000 was clarified as CT Page 12816 the total by himself and Meyer prior to October 14, 1993. (Transcript, May 21, 1996, pp. 65-66). Schinella also testified that Lark was having financial difficulties, and needed a reduction in the rent. (Transcript, May 21, 1996, p. 74). Schinella testified that Meyer assured him that all delinquent rents would be forthcoming. (Transcript, May 22, 1996, pp. 7-8, 43). Schinella reaffirmed that the amount of the delinquent rent was $431,000. (Transcript, May 22, 1996, pp. 13-14). Schinella testified that this included the contested $56,000. (Transcript, May 22, 1996, p. 32). Schinella also testified about another conversation he had with Meyer concerning the total outstanding rental balance. (Transcript, May 22, 1996, pp. 38-39). Accordingly, there was ample evidence before the attorney trial referee to sustain his denial of Lark's motion to dismiss.
Lark raises an exception to the ruling of Judge Grogins on One Sylvan's motion to amend its complaint, adding the second count sounding in equitable estoppel. Lark argues that the late motion was prejudicial to Lark's defense and was otherwise unwarranted and impermissible. Judge Grogins issued an order allowing One Sylvan to amend its pleadings to add the second count, provided Lark was allowed time to call any additional witnesses and to amend its pleadings as required. The order was predicated on Practice Book § 178, which states in pertinent part that "[i]n all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial." "An attorney trial referee cannot make a legal determination regarding the merits of a contested motion to amend pleadings." Liberty Plumbing Supply Co. v. Paul S. Yoney, Inc.,41 Conn. App. 594, 597, 677 A.2d 13 (1996). As the motion to amend was determined by Judge Groggins, Lark's objection is improper and is denied.
 F. Lark's Objection To The ATR's Conclusions and Recommended Rulings
Lark argues that it is entitled to judgment because no obligation survives the modification agreements. Lark also argues that it proved at trial that One Sylvan was in breach of the lease agreement when it refused Lark's tender of rent. Finally, Lark argues that it is entitled to fees and costs associated with defending itself. Based on the well reasoned report of the attorney trial referee, as well as the legal grounds contained in this memorandum of decision, the recommended rulings and conclusion of the attorney trial referee are adopted by the CT Page 12817 court, except that One Sylvan is entitled to additional attorney's fees associated with the housing court case.
IV. CONCLUSION
The court adopts the report of the attorney trial referee as corrected except to the extent that the report limits the award of attorney's fees to One Sylvan. Accordingly, One Sylvan is entitled to damages in the amount of $56,000. Further, One Sylvan is entitled to the attorney's fees awarded by the attorney trial referee. The court awards an additional amount of $37,544.24 to One Sylvan, in accordance with the affidavit of its attorney, as attorney's fees stemming from the housing court action. Finally, all of the exceptions and objections raised by Lark to the report of the Attorney Trial Referee are denied.
SKOLNICK, J.