WILLIAM C. MUNROE ET AL. *v.* EMHART
CORPORATION ET AL.
(AC 15065)
(AC 15277)

Dupont, C. J., and O'Connell and Foti, Js.

Argued January 15—officially released July 29, 1997

*Daniel P. Scapellati,* and *Michael S. Taylor,* with whom, on the brief, was *Mark B. Seiger,* for the appellants-appellees (defendants).

*David G. Hetzel,* with whom, on the brief, were *Dennis O. Brown* and *Michael P. Thompson,* for the appellee-appellant (named plaintiff).

*Opinion*

O'CONNELL, J. The defendant Emhart Corporation (Emhart)[1] appeals from the trial court's judgment, after a court trial, for the named plaintiff, William C. Munroe.[2] Emhart claims in its appeal (AC 15065) that the trial court improperly failed to find that it had established a defense of accord and satisfaction. Munroe filed an independent appeal (AC 15277) claiming that the trial court abused its discretion in refusing to award him interest pursuant to General Statutes § 37-3a. We consolidated the appeals for hearing in this court and affirm the judgment of the trial court.

The record reveals the following facts. Munroe was employed by Emhart as a corporate attorney. In October of 1988, he was informed that his position was among those being eliminated as part of a reorganization of Emhart's legal department. In exchange for his release and promise to protect confidential information, Emhart offered Munroe an early retirement package. The offer included pension enhancements with a value at that time of $49,802. In addition, Emhart proposed a delayed separation date that allowed Munroe to vest options to an additional 1269 shares of Emhart stock,

---

[1] The defendants are Emhart, which merged into the Black & Decker Corporation, and B & D, Inc. Neither of the last two defendants ever employed the plaintiff or entered into any contract with him. Their only connection with this case was their acquisition of Emhart. We refer in this opinion to Emhart as the defendant.

[2] The plaintiffs at trial were William C. Munroe and James D'Amore. D'Amore did not participate in this appeal.

which he later exercised when they could be sold at a gain of more than $25,000. Before executing the agreement, Munroe asked for and received a written memorandum detailing which options would be exercisable and the time periods during which he could exercise them. On December 2, 1988, Munroe asked to receive the same stock options as other corporate officers and employees of similar age and service. More specifically, he wanted his unvested options accelerated like those of certain departing senior executives. Emhart declined to extend Munroe's retirement package to include anything more than was previously offered. Munroe signed the separation agreement on December 19, 1988, and received a check for the amount that Emhart argues was due him.

After executing the agreement, Munroe continued to seek acceleration of his stock options. During that time period, Emhart became the subject of a hostile takeover attempt. In response to that attempt, Emhart sent its shareholders and filed with the Securities and Exchange Commission (SEC) a form 14D-9 setting forth the terms of the takeover offer. This form included the information that on December 22, 1988, the Emhart board of directors had passed a resolution that "[i]n the event of a change in control . . . all then outstanding stock options . . . will become immediately exercisable. . . ." When Munroe signed the separation agreement on December 19, 1988, he was unaware that Emhart's board of directors was in the process of considering changes in the stock option plans.

On March 22, 1989, Munroe, after reading the 14D-9 form, again requested acceleration of his stock options. On April 19, 1989, Emhart informed Munroe that he could exercise the 750 remaining vested incentive stock options provided that the change of control occurred by April 30, 1989, but that he could not exercise any unvested stock options. On April 28, 1989, Munroe

received a "cash-out" memorandum and check. He was paid for all his vested shares, but not for his unvested shares. When he cashed the check he did not believe that he was entitled to receive any money for his unvested shares. In September, 1989, however, Munroe received a copy of the board of directors' vote that amended the stock option plans. For the first time, he became aware that he might be entitled to collect on the additional outstanding 2324 unvested shares.

In this action, Munroe seeks to be paid $46,932.88, which is the agreed value of the 2324 unvested shares that he held at the time of his termination. Emhart pleaded a special defense of accord and satisfaction. Following a two day trial, the court rendered judgment for Munroe in the amount of $46,932.88 plus interest at 12 percent from June 20, 1990, the date the complaint was filed with the court, until the date of judgment, plus costs. Additional facts are included in the analysis of each appeal.

I

EMHART'S APPEAL

The gravamen of Emhart's appeal is that the trial court improperly rejected its special defense of accord and satisfaction and consequently rendered judgment for Munroe for breach of certain stock option contracts when Munroe knowingly accepted a check tendered in full satisfaction of the defendant's obligations pursuant to these stock option contracts.

An action involving an identical issue was brought in the federal court by two other key Emhart employees who held stock options under the same plan as the plaintiff and who were terminated on the same date and under the same terms. *Lamb* v. *Emhart Corp.*, 47

F.3d 551 (2d Cir. 1995).[3] The Second Circuit studied the stock option plans and agreements, the stock option provisions that were included in the termination agreements and the change in control agreements. It concluded that the amendments were incorporated into the termination agreements by reference and that Munroe's options were outstanding when the employees were terminated. Id., 560. Consequently, it concluded that the plaintiffs in that case were entitled to be paid for their outstanding unvested shares. Id., 561.

Because of the similarity of *Lamb* v. *Emhart Corp.*, supra, 47 F.3d 551, and the present case, Munroe claimed at trial that he was entitled to judgment in accordance with a theory of collateral estoppel. The trial court agreed that collateral estoppel prevented Emhart from asking the trial court here to reinterpret the provisions of the stock option plans, the stock option agreements, the pertinent provisions of the termination agreement, and the change in control agreements. The trial court found that these issues were fully litigated in *Lamb* and therefore concluded that the amendments were incorporated into the termination agreements by reference and that the plaintiffs' options were outstanding at the time of their separation. In addition, the trial court concluded that even if collateral estoppel did not apply, and it had determined the issue de novo, it would have reached the same legal conclusions as the federal court.

The trial court found that, although collateral estoppel applied to the foregoing issues, it did not apply to Emhart's special defense of accord and satisfaction. This issue was not litigated in the federal action because Munroe was not a party and the issue of whether an

---

[3] The plaintiff in the present case was originally a plaintiff in *Lamb*, but was voluntarily dismissed because his claim for relief did not meet the minimum amount in controversy for federal diversity jurisdiction

accord and satisfaction existed is necessarily peculiar to Munroe.

Emhart claims in this appeal that the trial court improperly found that there was no accord and satisfaction when Munroe accepted the check and cash-out memorandum. Emhart's position is that accord and satisfaction does not require a dispute. Emhart's alternative argument is that, if the law requires a dispute, the trial court improperly found that there was no dispute between Munroe and Emhart. We are bound by the trial court's finding that no dispute existed between the parties at the time Munroe cashed the check. This was a valid finding based upon the evidence.

Our Supreme Court recently held that "[w]hen there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim. . . . An accord is a contract between a creditor and debtor for the settlement of a claim by some performance other than that which is due. . . . Without a mutual assent, or a 'meeting of the minds,' there cannot be a valid accord." (Citations omitted; internal quotation marks omitted.) *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 764, 674 A.2d 1313 (1996).

To prove an accord and satisfaction, the defendant must show that at the time of the agreement there was a good faith dispute over the existence of a debt or over an amount owed, and that the debtor and the creditor negotiated a contract of accord to settle the claim. *Peerless Hosiery Co.* v. *Northern Ins. Co.*, 108 F. Sup. 52, 55–56 (D. Conn.), aff'd, 199 F.2d 957 (2d Cir. 1952). The accord must be a new agreement based on new consideration. *Crucible Steel Co.* v. *Premier Mfg. Co.*, 94 Conn. 652, 656, 110 A. 52 (1920). The proponent

must be able to show that there was a meeting of the minds, and that the offer by the debtor was clearly tendered as full satisfaction of the debt and that the payment was knowingly accepted. Id.; *Gillis* v. *Gillis*, 21 Conn. App. 549, 552, 575 A.2d 230, cert. denied, 215 Conn. 815, 576 A.2d 544 (1990).

The trial court found that "[w]hen Munroe cashed the check which he received with a cash-out memo on April 28, 1989, he believed that he had received everything that he was entitled to receive. Thus he had no dispute at that time regarding the amount of the check." The trial court found that Munroe "had no knowledge that cashing the check would extinguish his rights." Thus, the trial court concluded that because no good faith dispute was negotiated, no accord and satisfaction was reached. These factual findings are binding on this court unless they are clearly erroneous in light of the evidence. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Emhart has not demonstrated that they were clearly erroneous. Accordingly, we conclude that there was no dispute that was settled by the acceptance of the check and no meeting of the minds.

Emhart relies on *Hanley Co.* v. *American Cement Co.*, 108 Conn. 469, 143 A. 566 (1928), and *Gilreath* v. *Sentry Ins. Co.*, 38 Conn. Sup. 422, 450 A.2d 873 (1982), for the proposition that a dispute need not exist for accord and satisfaction. Neither case supports this proposition. In *Hanley Co.* v. *American Cement Co.*, supra, 473, the Supreme Court found a valid accord and satisfaction, even though a dispute between the parties existed when a lesser officer of the plaintiff corporation accepted a check not knowing of the dispute. In *Gilreath* v. *Sentry Ins. Co.*, supra, 423, the Appellate Session of the Superior Court expressly held that "[t]he discharge of a debt by accord and satisfaction occurs when a debtor renders performance different from that

allegedly due to his creditor and the creditor accepts the substituted performance *in full satisfaction of the disputed claim.* . . . The cashing . . . of a check expressly sent in *full settlement of a disputed claim,* operates as an accord and satisfaction . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) Because the trial court specifically found that there was no dispute, and the defendant has not demonstrated an abuse of discretion, we conclude that there was no valid accord and satisfaction.[4]

## III

## MUNROE'S APPEAL

As part of its judgment, the trial court awarded interest at 12 percent from June 20, 1990, the date the writ was returned to court, to the date of judgment. This interest award was made pursuant to the offer of judgment statute. General Statutes § 52-192a.[5] After rendition of the judgment, Munroe filed a motion seeking to

---

[4] We note that in addition to Emhart's argument that a dispute is not necessary for a valid accord and satisfaction, Emhart alternatively argued that a dispute did exist for which an accord and satisfaction was reached. We do not address this alternative claim because the trial court specifically found that a dispute did not exist. We are bound by this finding because Emhart has not persuaded us that it is clearly erroneous.

[5] General Statutes § 52-192a provides in relevant part: "Offer of judgment by plaintiff. Acceptance by defendant. Computation of interest. (a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within

have the trial court add further interest at 10 percent pursuant to General Statutes § 37-3.[6] The trial court denied the motion stating that "[i]nasmuch as the court has already awarded interest pursuant to § 52-192a, it believes that it would be inequitable to award further interest in light of the fact that there was a good faith dispute."[7]

Munroe contends that denial of § 37-3a interest because § 52-192a interest has already been awarded is not supported in the law. We do not agree. Such denial was sanctioned in *Loomis Institute* v. *Windsor*, 234 Conn. 169, 180–81, 661 A.2d 1001 (1995). In *Loomis Institute*, the Supreme Court expressly stated that "having already awarded the [plaintiff] mandatory offer of judgment interest, the trial court might reasonably have concluded that a further award of interest pursuant to § 37-3a would not have been equitable. . . . In these circumstances, we are not persuaded that the trial court abused its discretion in failing to award the [plaintiff] interest pursuant to § 37-3a in addition to interest awarded pursuant to § 52-192a." Id., 182. Munroe has not demonstrated that the trial court abused its discretion in failing to award interest pursuant to § 52-192a.

The judgment is affirmed.

In this opinion the other judges concurred.

---

thirty days and prior to the rendering of a verdict by the jury or an award by the court, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case. . . ."

[6] General Statutes § 37-3a provides in relevant part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . ."

[7] We note that the "good faith dispute" regarding the award of interest involves whether Emhart denied its debt to Munroe with good faith; it does not relate to the issue of a dispute regarding accord and satisfaction discussed in part I of this opinion.