[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The issue presently before the court is whether the defendants Walnut Hill, Inc. (Walnut Hill) and O'Connell, Flaherty 
Attmore, L.L.C. (OFA) are entitled to summary judgment as a matter of law on their special defense of accord and satisfaction, under these unusual circumstances. In sum, the law firm of OFA, on behalf of its client Walnut Hill, utilized a mortgage release provided by attorney Jason Pearl (Pearl), counsel for the plaintiff Twin City Pharmacy, Inc. (Twin City). A dispute arose over the amount owed from Walnut Hill to Twin City in connection with such release, resulting in Pearl initiating this lawsuit against defendants. After this suit was served, OFA tendered a client's fund account check in the amount of $200,000 CT Page 1300 intended as a settlement of the disputed debt and containing clear and conspicuous release language on the back of the check and in a letter of same date. Without defendants' consent, Pearl subsequently obliterated the release language on the back of the check and negotiated the check. The lawsuit has continued unabated.
This court holds that Pearl's negotiation of the check, on behalf of plaintiff Twin City, with knowledge that the check was issued in full settlement of the debt and lawsuit, constitutes an accord and satisfaction under both the Uniform Commercial Code and common law, entitling Walnut Hill and OFA to summary judgment as a matter of law.
 The Undisputed Facts
A more detailed exposition of the undisputed and relevant facts is in order. They are as follows: Walnut Hill and Twin City are each commercial entities. The former is a nursing home and the latter, as its name implies, a pharmacy. In the summer of 1998, because of a refinancing by Walnut Hill, they entered into negotiations, through their attorneys, over the amount owed to Twin City on its mortgage upon Walnut Hill's realty. Twin City claimed Walnut Hill owed it in excess of $263,000 under the mortgage note, including principle and interest. After negotiations, the parties agreed to settle the mortgage debt in the amount of $200,000. As part of that agreement, OFA, on behalf of its client, Walnut Hill, was to forward payment to Pearl[1]
in return for Twin City's release of the mortgage. Pearl furnished that release in escrow to OFA, along with an extract of board minutes authorizing same, by letter of September 2, 1998.
After the passage of thirty days, Pearl informed OFA via letter dated October 2, 1998, and received at OFA on October 5, that the time for forwarding the $200,000 settlement check had lapsed and, therefore, the agreement was canceled. Twin City claims that the agreement was contingent on its receiving payment within thirty days from the date on which the release was forwarded. Twin City claims this thirty day time limit was contained in the extract of minutes of the annual meeting of directors, which was sent to OFA as an enclosure to the September 2, 1998 letter from Pearl. Walnut Hill and OFA insist that this original settlement agreement with Twin City did not contain a thirty day time limit.[2]
CT Page 1301
The refinancing closing took place after the receipt by OFA of the letter but before Attorney Adler, to whom it was addressed, saw it on October 7. The release was used.
In response to Attorney Pearl's letter of October 2, 1998, OFA sent Attorney Pearl a hand delivered letter. In the letter, OFA objected to the time limit as being part of their clients' agreement and enclosed a check for $200,000 from a title insurer. That check contained restrictive language on the back on the check in the endorsement area that read: "The negotiation of this check represents full and final settlement of all claims against Walnut Hill, Inc." Pearl attempted to negotiate such check but was unsuccessful.[3]
On October 8, 1998, Pearl issued and had served a writ, summons and complaint against both Walnut Hill and OFA, alleging that they breached the terms of the original settlement agreement regarding the mortgage note by utilizing the release after the thirty day period and without payment for it. In its complaint, Twin City alleges that Walnut Hill and OFA are now indebted to it for the whole amount of the mortgage note, an amount in excess of $263,000, including principle and interest.
On October 9, 1998, OFA telefaxed a letter to Pearl indicating, inter alia, receipt of the suit papers, that a client's account check for $200,000 would be hand delivered that day to Pearl and requesting a withdrawal of the suit. That check from OFA was delivered to Pearl on October 9 and contained on its reverse, in the endorsement area, the typed words: "The negotiation of this check represents acceptance of full and final settlement of all claims against Walnut Hill, Inc." The words are both clear and obvious.
Pearl, by telefax of October 9, indicated his receipt of this check, indicated that if he received a second check for the interest due of $33,799.94 he would "not return our Summons and Complaint to Court" and complained "[b]ecause of the unauthorized release language on the reverse side of the draft, I am unable to negotiate same without the other remaining [interest due] also being on hand."
By return telefax, also on October 9, OFA responded: "If you are refusing to deposit the check issued from our Clients' Funds as full and final settlement of this matter, you must return it immediately to this office otherwise you will be deemed to have CT Page 1302 converted it. If you refuse to accept our Clients' Fund check as full and final payment, you may return your Writ Summons and Complaint to the court and we will proceed appropriately. No further settlement offers will be made in this case." The case was returned to court on October 13, 1998. On that same date, Pearl negotiated the OFA check, after first altering it by obliterating the release language on the back of the check[4]
On July 22, 1999, Walnut Hill and OFA amended their answer to add a special defense that Twin City's claims are barred by the doctrine of accord and satisfaction. On August 10, 1999, Walnut Hill and OFA filed a motion for summary judgment with supporting memorandum of law and various exhibits. In their motion for summary judgment, Walnut Hill and OFA argue that the dispute over the debt from Walnut Hill to Twin City and the subsequent use of the release by OFA, which is the subject of the instant suit, was settled by an accord and satisfaction under the common law and pursuant to General Statutes § 42a-3-311. As such, they argue they are entitled to summary judgment as a matter of law.
On September 10, 1999, Twin City filed a brief, counter affidavit, and exhibits in opposition to the summary judgment motion filed by Walnut Hill and OFA. In response to the summary judgment motion, Twin City argues that genuine issues of material fact exist as evidenced in Pearl's affidavit. Twin City argues that issues of material fact exist as to: (1) the essential terms of the original escrow agreement; (2) the thirty day time limit in the original escrow agreement; (3) the form of payment under such original agreement; (4) the recording of the release prior to payment under the original agreement; and (5) whether a general release was a part of the original escrow agreement.
On September 17, 1999, in response to Twin City's opposition brief. Walnut Hill and OFA filed a reply brief and affidavit. Therein, Walnut Hill and OFA argue that the facts alleged to be in dispute by Twin City merely relate to acts occurring prior to the tender of OFA's settlement check and are not material to the occurrence of the subsequent accord and satisfaction. They also argue that the debt was unliquidated at the time of the accord and satisfaction.
Subsequently, Twin City filed a supplemental brief on September 22, 1999, accompanied by deposition testimony. In its brief, Twin City argues that the underlying debt was liquidated at the time of the accord and, therefore, § 42a-3-311 does not apply. At CT Page 1303 oral argument, plaintiff expanded that position to claim the accord and satisfaction lacks consideration because Walnut Hill was already under an obligation to pay Twin City $200,000.
Oral argument regarding the summary judgment motion was heard by the court on September 27, 1999.
 The Summary Judgment Standard
"The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . ., a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.)Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55,707 A.2d 15 (1998).
"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). "Where there is no question of fact or law which remains to be answered . . ., a motion for summary judgment should be granted. If the sole question is one of law, it could properly be determined on a motion for summary judgment." (Citations omitted.) Schlott v. Zaremski,32 Conn. Sup. 567, 568-69, 345 A.2d 588 (1975).
 Uniform Commercial Code Provisions regarding Accord and Satisfaction
The Uniform Commercial Code (UCC) has been adopted by the Connecticut legislature in General Statutes § 42a-1-101, et seq. Article 3 of the UCC specifically applies to negotiable CT Page 1304 instruments. See General Statutes § 42a-3-102, Comment 1.
In the instant case, a negotiable instrument, a check, tendered as an accord of an outstanding debt and lawsuit, is at the, heart of the parties' dispute. The parties involved in the negotiation of the check are commercial entities, represented by counsel, and involved in a commercial transaction. As such, the negotiable instrument provisions of Article 3 of the UCC as adopted by the Connecticut legislature govern the case at bar. "The code was drafted to simplify, clarify, modernize and unify the law of commercial transactions. General Statutes § 42a-1-102 (2)."Normand Josef Enterprises, Inc. v. Connecticut National Bank,230 Conn. 486, 502, 646 A.2d 1289 (1994).
The UCC's Article 3 provides for accord and satisfaction by use of an instrument: "(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply. (b) . . . the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim. . . ." General Statutes § 42a-3-311
Comment one of § 42a-3-311 makes it clear that this code section applies to a situation such as the one at hand.[5]: "This section deals with an informal method of dispute resolution carried out by use of a negotiable instrument. In the typical case there is a dispute concerning the amount that is owed on a claim. . . . [T]he person against whom the claim is asserted may attempt an accord and satisfaction of the disputed claim by tendering a check to the claimant for some amount less than the full amount claimed by the claimant. A statement will be included on the check or in a communication accompanying the check to the effect that the check is offered as full payment or full satisfaction of the claim. Frequently, there is also a statement to the effect that obtaining payment of the check is an agreement by the claimant to a settlement of the dispute for the amount tendered."
Previously, in some jurisdictions, the creditor was not bound by such a restrictive endorsement. "Before enactment of revised CT Page 1305 Article 3, the case law was in conflict over the question of whether obtaining payment of the check had the effect of an agreement to the settlement proposed by the debtor" because of the reservation of rights code section.[6] Id.
It is now unquestioned that UCC § 3-311 governs a check tendered in settlement of a dispute. "As part of the revision of Article 3, Section 1-207 has been amended to add subsection (2) stating that Section 1-207 `does not apply to an accord and satisfaction.' Because of that amendment and revised Article 3, Section 3-311 governs full satisfaction checks. . . . Section 3-311 is based on a belief that . . . informal dispute resolution by full satisfaction checks should be encouraged." General Statutes § 42a-3-311, Comment 3.
General Statutes § 42a-3-311 sets forth clearly what the defendants must prove to prevail on their special defense. "The person seeking the accord and satisfaction must prove that the requirements of subsection (a) are met. If that person also proves that the statement required by subsection (b) was given, the claim is discharged unless subsection (c) applies.[7]
Normally the statement required by subsection (b) is written on the check. Thus, the canceled check can be used to prove the statement as well as the fact that the claimant obtained payment of the check. Subsection (b) requires a `conspicuous' statement that the instrument was tendered in full satisfaction of the claim. `Conspicuous' is defined in Section 1-201 (10). The statement is conspicuous if `it is so written that a reasonable person against whom it is to operate ought to have noticed it.'" General Statutes § 42a-3-311, Comment 4.
In the case at hand, there is no genuine issue of material fact as to the requirements for an accord and satisfaction by check pursuant to § 42a-3-311. There was a bona fide dispute between the parties as to the amount defendants' owed Twin City upon the mortgage note and for the release of same. Ironically, Pearl's affidavit, filed by plaintiff and focusing almost exclusively on the disagreements between the parties prior to the tender of the settlement check is ample evidence of such. Twin City claimed that, because Walnut Hill breached the settlement agreement as to timing and method of payment, it was now due the full amount of the mortgage note and not the reduced amount; and defendants claimed that Walnut Hill did not owe the entire amount of the mortgage note, but the lesser amount pursuant to the pre-closing agreement. CT Page 1306
Nor does the fact that defendants' paid as the accord and satisfaction only the amount they conceded Walnut Hill owed to Twin City mean the claim was liquidated, as plaintiff claims. "This court has had numerous occasions to decide whether, in the context of accord and satisfaction, a claim is unliquidated when the debtor tenders payment in an amount that does not exceed that to which the creditor is concededly entitled. Where it is admitted that one of two specific sums is due, but there is a dispute as to which is the, proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction. . . . Where the claim is unliquidated any sum, given and received in settlement of the dispute, is a sufficient consideration. (Quotation marks omitted). County Fire Door Corporation v. C. F. Wooding Co.,202 Conn. 277, 282, 520 A.2d 1028 (1987).
It is clear that the plaintiff cashed the check, through its attorney, and obtained the $200,000. And it is clear that the check was tendered in good faith in full satisfaction of Twin City's claim and this suit and such was conspicuously stated both on the check and in the related letters from OFA.
OFA's check stated on its back, near the endorsement area, that "the negotiation of [the] check represents full and final settlement of all claims against Walnut Hill, Inc." Attorney Pearl received that check on October 9, 1998, as well as a facsimile from OFA seeking a withdrawal of the suit and a second facsimile from OFA containing the following language: "If you are refusing to deposit the check issued from our Clients' Funds as full and final settlement of this matter, you must return it immediately to this office otherwise you will be deemed to have converted it. If you refuse to accept our Clients' Funds check as full and final payment, you may return your Writ Summons and Complaint to the court and we will proceed appropriately. No further settlement offers will be made in this case."
That the check restriction was conspicuous is obvious not only from an examination of the check and facsimiles but also from Pearl's reaction in his facsimile of the same date to OFA. In that facsimile he complains of what he admits is the "release language on the reverse side of the draft."
Because the statutory requirements have been satisfied, Twin City's claim in the instant suit has been discharged under an CT Page 1307 accord and satisfaction by instrument pursuant to General Statutes § 42a-3-311.
 Common Law Accord and Satisfaction
Even if the UCC did not clearly dictate the outcome of this motion, the Connecticut common law principles of accord and satisfaction would. The common law applies to supplement the UCC. The policy behind the foregoing is to "proceed . . . [with] a more fundamental principle of adjudication. Just as the legislature is presumed to enact legislation that renders the body of the law coherent and consistent, rather than contradictory and inconsistent . . . courts must discharge their responsibility, in case by case adjudication, to assure that the body of law — both common and statutory — remains coherent and consistent."(Quotation marks omitted.) Normand Josef Enterprises,Inc. v. Connecticut National Bank, supra, 230 Conn. 502.
"To prove an accord and satisfaction, the defendant must show that at time of the agreement there was a good-faith dispute over the existence of a debt or over an amount owed, and that the debtor and the creditor negotiated a contract of accord to settle the claim." Munroe v. Emhart Corp., 46 Conn. App. 37, 42,699 A.2d 213, cert. denied, 243 Conn. 926, 701 A.2d 658 (1997). As indicated previously, there was a good-faith dispute over the amount owed for the note, which gave rise to this suit. As to whether there was an agreement to settle the claim, "[t]he Court can infer the assent or meeting of the minds essential to an accord and satisfaction from the circumstances surrounding and the expressions accompanying the transaction in question."Swanson v. United-Greenfield, Corp., 239 F. Sup. 299, 304 (D. Conn. 1965). Where the parties have their agreement in writing, as here, that intent should be determined by a fair and reasonable construction of the language of the documents. Sturmanv. Socha, 191 Conn. 1, 10, 463 A.2d 527 (1983). The restrictive language on the check and in OFA's letters of October 9, 1998 made it clear that plaintiff cashing the check would constitute a release by plaintiff of its claims and cessation of this suit.
Our Supreme Court has expressly found the cashing of such a check to be the negotiation of a contract of accord in words that capture precisely this situation. "When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim. CT Page 1308 Such a contract is often initiated by the debtor, who offers an accord by tendering a check as `payment in full' or `in full satisfaction.' If the creditor knowingly cashes such a check, or otherwise exercises full dominion over it, the creditor is deemed to have assented to the offer of accord. Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract of accord is supported by consideration. . . . A contract of accord and satisfaction is sufficiently supported by consideration if it settles a monetary claim that is unliquidated in amount. . . . Under the common law, the plaintiff could not simultaneously cash such a check and disown the condition on which it had been tendered." (Citations omitted.) County Fire Door Corp. v. C.F. Wooding Co., supra,202 Conn. 281-83.
Here Twin City has cashed the check and persisted in its suit in an improper attempt to enjoy the fruits of a settlement with defendants and still maintain the opportunity to win an additional amount from the same parties at a later date. Under plaintiffs unique view of the law, a party receiving a settlement check would be free to simply obliterate the settlement language from the check, obtain the proceeds and continue its suit in pursuit of a larger amount. Such conduct is inimical to the orderly settlement and disposition of the many civil suits within the judicial system and inimical to the level of trust between counsel necessary to a proper functioning of our system of justice. As such, it is contrary to sound public policy.
Plaintiff cannot prevail in its view for "[i]f a creditor knowingly cashes or otherwise exercises full dominion over a check explicitly tendered in full satisfaction of an unliquidated debt, the creditor cannot disown any conditions upon which the check has been tendered." Newman Partners v. CFC ConstructionLtd. Partnership, 236 Conn. 750, 765, 674 A.2d 1313 (1996).
 CONCLUSION
No genuine issue of material fact exists and Walnut Hill and OFA are entitled to summary judgment as a matter of law on the ground of accord and satisfaction. The motion is granted.
James T. Graham Superior Court Judge CT Page 1309