[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. PROCEDURAL HISTORY
On March 21, 1997, the plaintiff, Riverbend Executive Center, Inc. (Riverbend) filed a thirteen count complaint against the defendants, Modern Telecommunications (CT), Inc. (Modern), MTI/The Image Group, Inc. (MTI), William A. Dalessandro and John Sanfratello (collectively the defendants). Riverbend alleged the following: breach of contract by Modern for failure to pay rent from January 1, 1997 to October 31, 2001 (first count); liability of MTI pursuant to a guaranty for Modern's failure to pay rent from January 1, 1997 to October 31, 2001 (second count); breach of contract by Modern for removing fixtures (third count); liability of MTI pursuant to a guaranty for Modern's removal of fixtures (fourth count) conversion of fixtures by Dalessandro (fifth count); conversion of fixtures by Sanfratello (sixth count); theft of fixtures pursuant to General Statutes § 52-564 by Dalessandro (seventh count); theft of fixtures pursuant to General Statutes § 52-564 by Sanfratello (eighth count); breach of contract by Modern for refusing Riverbend access to leased property (ninth count); liability of MTI pursuant to a guaranty for Modern refusing it access to leased property (tenth count); tortious interference with a business relationship by Modern (eleventh count); tortious interference with a business relationship by Dalessandro (twelfth count); and tortious interference with a business relationship by Sanfratello (thirteenth count).[1]
Riverbend seeks money damages, attorneys' fees, late charges treble damages pursuant to § 52-564 and such other and further relief as the court deems just and proper. The defendants filed an answer alleging the following ten special defenses: laches (first special defense); estoppel (second special defense); waiver (third special defense); equitable doctrine of unclean hands (fourth special defense); failure to state a claim upon which relief can be granted (fifth special defense); accord and satisfaction (sixth special defense); failure to mitigate damages (seventh special defense); proper execution of early termination option (eighth special defense); damages caused by plaintiff (ninth special defense); and the prior pending action doctrine (tenth special defense).
 II. FACTS
The court finds the following facts: On or about August 1, 1991, CT Page 6709 Riverbend and Modern entered into a lease agreement. In the lease agreement, Riverbend agreed to lease the property known as One Riverbend located in Stamford, Connecticut (the leased property) to Modern for a period of ten years and three months commencing on August 26, 1991.[2]
(See Plaintiff's exhibit 1; Answer dated 6/12/1997.) Modern agreed to pay $20,290 per month for the first five years rent and $26,782 per month for the final five years rent along with an additional monthly rent.[3]
(See Plaintiff's exhibit 1.)
The lease agreement provided Modern with a cancellation option. (See Plaintiff's exhibit 1, rider II.) Pursuant to the lease agreement, Modern had to execute the cancellation option by May 26, 1996. (See Plaintiff's exhibit 1, rider II.) In April of 1996, Mr. John Sanfratello, Modern's general manager for the leased property, told Ralph Michel, Riverbend's vice-president, that Modern needed more time to decide whether to exercise the cancellation option. (See Tr. 8/4/99, pp. 30-33.) Michel then orally agreed to allow Modern additional time to exercise the cancellation option. (See Tr. 8/10/99, pp. 103-05; Tr. 8/11/99, pp. 61-62.)
On June 26, 1996, William A. Dalessandro, president of Modern, sent formal written notice of Modern's intention to exercise the cancellation option along with a check for the cancellation fee in the amount of $143,650. (See Plaintiff's exhibit 6.) Riverbend, however, refused to accept Modern's exercise of the cancellation option and returned the check. (See Plaintiff's exhibit 7; Tr. 8/4/99, p. 50.) Subsequently, Modern tendered Riverbend monthly payments for the last six months of its occupancy and requested that Riverbend apply the monthly payments to the cancellation fee. (See Plaintiff's exhibits 9, 15.) Riverbend then, sent Modern letters stating that it applied the monthly payments toward the rent, not the cancellation fee. (See Plaintiff's exhibits 14, 16.)
Modern vacated the leased property on or about December 26, 1996. (See Plaintiff's exhibit 17.) When Modern vacated the leased property, it removed fixtures that should have remained on the leased property. The removed fixtures included doorknobs, a sink, a dishwasher, track lighting fixtures, a key card system and an alarm system. (See Tr. 8/4/99, pp. 58-65, 79-99; Tr. 8/5/99, pp. 50-51.) Additionally, Michel previously had requested access from Modern to show the leased property to prospective purchasers but never received access. (See Tr. 8/12/99, pp. 30-33.)
 III. DISCUSSION
A. Complaint
CT Page 6710
1. Breach of Contract for Failure to Pay Rent (First Count)
Riverbend alleges that Modern breached the lease agreement when Modern failed to pay the installment of rent due on January 1, 1997 or any subsequent installment of rent due. Riverbend further alleges that Modern failed properly to execute the cancellation option in the lease agreement because it failed to give proper notification of its exercise of the cancellation option by May 26, 1996. Modern argues that oral modification of the lease agreement occurred thereby extending the cancellation option until June 26, 1996.[4] Alternatively, Modern argues that Riverbend waived the May 26, 1996 deadline for the cancellation option.
The court finds that Modern properly executed the cancellation option in the lease agreement because Riverbend waived its right to have the cancellation option exercised by May 26, 1996.[5] "Waiver is the intentional relinquishment of a known right. . . . A waiver occurs, therefore, only if there is both knowledge of the existence of the right and intent to relinquish it." (Citations omitted; internal quotations marks omitted.) Heyman Associates No. 1 v. Insurance Co. of Pennsylvania,231 Conn. 756, 777, 653 A.2d 122 (1995). Moreover, "[w]aiver may be inferred from the circumstances if it is reasonable so to do. . . . Whether conduct constitutes a waiver is a question of fact." (Emphasis in original; internal quotation marks omitted.) Cassella v. Kleffke,38 Conn. App. 340, 347, 660 A.2d 378, cert. denied, 235 Conn. 905,665 A.2d 899 (1995). "[T]he doctrine of waiver is an exception to the doctrine of consideration but it is a very limited exception because the exception relates only to an immaterial part of the agreed exchange." J. Calamari J. Perillo, Contracts (3d Ed. 1987) § 11-31, p. 494.
The court finds that the May 26, 1996 deadline was not material because neither the lease agreement itself nor the circumstances surrounding its execution indicate that time was of the essence concerning the May 26, 1996 deadline. "The fact that a contract states a date for performance does not necessarily make time of the essence." Grenier v. ComprattConstruction Co., 189 Conn. 144, 151, 454 A.2d 1289 (1983); see also J. Calamari J. Perillo, Contracts (3d Ed. 1987) § 11-18, p. 461. "Where the agreement does not specifically state that time is of the essence, it is presumed not to be unless the parties have expressed a contrary intent." Mihalyak v. Mihalyak, 11 Conn. App. 610, 616, 529 A.2d 213
(1987). "The primary question is whether the time deadlines were material terms of the parties' agreement that required strict compliance and this question requires a consideration of the relevant factors of the transaction to determine the parties' intent." Raymond Marketing Corp. v.Cary, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 322740 (December 17, 1996, Stevens, J.). Here, the cancellation option did not contain a time is of the essence provision. CT Page 6711 Moreover, Riverbend failed to present any evidence that the failure to comply with the May 26, 1996 deadline substantially altered their lease agreement. See Grenier v. Compratt Construction Co., supra, 189 Conn. 151
(holding time was not of the essence when the "defendant has made no factual showing of how it was injured by the ten-day delay . . ."). Accordingly, the court finds that the May 26, 1996 deadline was not material to their lease agreement, and the May 26, 1996 deadline could have been waived.
The court finds that Riverbend through its oral representations waived its right to have the cancellation option exercised by May 26, 1996. Beginning in April of 1996, Sanfratello and Michel engaged in discussions concerning an extension on the exercise date of the cancellation option to allow Modern time to negotiate a service agreement with the Food Network. (See Tr. 8/4/99, pp. 30-33.) Michel, then, orally agreed to allow Modern additional time to exercise the cancellation option. (See Tr. 8/10/99, pp. 103-05; Tr. 8/11/99, pp. 61-62.) Consequently, Michel's oral assurances that Riverbend would extend the exercise date of the cancellation option caused it to waive its right to the May 26, 1996 deadline. See Van Langendorff v. Riordan, 147 Conn. 524, 528, 163 A.2d 100
(1960) ("Provisions in a written contract requiring written orders for changes in the work or for extra work may be waived by the parties so that the owner becomes liable for changes or extras done by oral direction."). While Michel sent Sanfratello a proposed amendment to the lease agreement that provided for a written extension of the cancellation option until June 30, 1996, Modern never signed the proposed amendment. (See Plaintiff's exhibit 3; Tr. 8/11/99, pp. 75-77.) In a letter dated May 28, 1996 to Sanfratello, Michel stated in order for Modern to receive the extension of the cancellation option, Modern would have to sign the proposed lease amendment. (See Plaintiff's exhibit 5.)
The court further finds that Modern properly exercised the cancellation option because the exercise of the cancellation option by June 26, 1996 was reasonable. "As a matter of fairness the [time] limitation once waived may be reimposed if there has been no change of position in reliance upon the waiver; and even if there has been such reliance a new limitation may be set by [the plaintiff], provided that a reasonable time is allowed." J. Calamari J. Perillo, Contracts (3d Ed. 1987) §11-31, p. 494. Even construing the May 28, 1996 letter as a revocation of Riverbend's waiver, Modern still exercised the cancellation option within a reasonable amount of time following the revocation of the waiver. Modern had reasonably relied upon Riverbend's waiver to continue its ongoing negotiations with the Food Network. (See Tr. 8/11/99, p. 61.) Consequently, Riverbend had to give Modern a reasonable amount of time to make a decision concerning the cancellation option after the revocation of its waiver. See Miller v. Bourgoin, 28 Conn. App. 491, 498, 613 A.2d 292, CT Page 6712 cert. denied, 223 Conn. 927, 614 A.2d 825 (1992) ("Where `a definite date for performance is specified in the agreement, but performance on time is not of the essence, either party has power to make on that date or on some subsequent date performance essential . . . provided that the notice leaves a reasonable time for rendering the performance.'"); see alsoBradford Novelty Co. v. Technomatic, Inc., 142 Conn. 166, 172, 112 A.2d 214
(1955) ("[T]he plaintiff having acquiesced in the nonperformance of the contract within the time stipulated, cannot peremptorily rescind the contract [because] [i]t must first give notice of its intention to do so and allow a reasonable time for performance."). Subsequently, on June 26, 1996, Modern sent a letter to Riverbend that stated its intent to exercise the cancellation option. (See Plaintiff's exhibit 6.) Taking a period of approximately thirty days after the waiver to decide whether to exercise the cancellation option is not unreasonable when the lease agreement itself was for ten years and three months. Accordingly, the court finds that Modern exercised its cancellation option within a reasonable amount of time.
In accordance with its finding that Modern exercised its cancellation option in a timely manner, the court finds that Modern must tender Riverbend the cancellation fee pursuant to the lease agreement. Modern argues that the cancellation fee is the tender of a lump sum payment of the last six months rent. Indeed, Modern attempted to tender a lump sum payment of the last six months rent as satisfaction of the cancellation fee. (See Plaintiff's exhibit 6.) Moreover, Modern tendered Riverbend monthly payments for the last six months and requested that Riverbend apply the monthly payments to the cancellation fee. (See Plaintiff's exhibits 9, 15.) Riverbend, however, rejected Modern's lump sum payment because it argued that Modern had not properly exercised the cancellation option. (See Plaintiff's exhibit 7.) Also, Riverbend sent Modern letters stating that it applied the monthly payments toward the rent, not the cancellation fee. (See Plaintiff's exhibit 14, 16.)
The court finds the clear and unambiguous language of the lease agreement required the cancellation fee to consist of the payment of $143,650 along with the continued payment of rent during the six-month cancellation interval. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . .". (Internal quotation marks omitted.) Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P.,252 Conn. 479, 498, 746 A.2d 1277 (2000).
Here, the cancellation option of the lease agreement clearly provides: "(4) Payment of a cancellation fee of $143,650 must accompany the election to cancel [and] (5) Tenant continues to be in full compliance CT Page 6713 with all terms and conditions of this Lease during the period following the notice of cancellation and continuing to the Cancellation Date." (Plaintiff's exhibit 1, Rider II.) The court finds the language of this cancellation option to be clear and unambiguous. Moreover, the court will not address Modern's argument that Riverbend's insertion of continued rental payments into the cancellation fee for the proposed lease amendment reflects the ambiguity of the original lease agreement. SeeTallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P., supra,252 Conn. 498 ("`[A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.'"). Accordingly, the court finds that the cancellation fee is the payment of $143,650 along with the continued payment of rental obligations until the cancellation date.
The court finds that Modern's misinterpretation of the cancellation fee does not constitute a breach of the lease agreement because Riverbend prevented it from exercising the cancellation option. "In order to amount to a prevention of performance by the adversary party, the conduct on the part of the party who is alleged to have prevented performance must be wrongful, and accordingly, in excess of his legal rights." (Internal quotation marks omitted.) Federal Finance Co. v. Forman Properties, Inc.,135 Conn. 153, 157, 62 A.2d 516 (1948); see also William Raveis RealEstate, Inc. v. Stawski, 31 Conn. App. 608, 612, 626 A.2d 797 (1993) (A party "`who has wrongfully prevented the other party from completing performance cannot set up the nonperformance of the other as a defense.'"). Here, Riverbend refused to accept Modern's proper exercise of the cancellation option. (See Plaintiff's exhibits 7, 16.) Consequently, Riverbend's refusal made it impossible for Modern properly to have tendered the cancellation fee of $143,650 along with the continued payment of rent during the six-month cancellation interval. Despite Modern's present misinterpretation concerning the cancellation fee, the court will not assume that it would have failed to tender the proper cancellation fee when Riverbend allowed it no opportunity to have tendered it. Accordingly, the court finds that no breach of the lease occurred by Modern not previously tendering the proper cancellation fee. The court finds, however, Modern is liable for the cancellation fee of $143,650 pursuant to the lease agreement.
2. Breach of Guaranty by MTI for Failure to Pay Modern's Rent (Second Count)
The court finds that in its guaranty to Riverbend, MTI agreed to be liable for Modern's obligations in the lease agreement. (See Plaintiff's exhibit 1, schedule B.) As previously stated, Modern is not liable for rent from January 1, 1997 to October 31, 2001; therefore, MTI is not liable to Riverbend for the aforementioned rent. MTI, however, is liable for the cancellation fee of $143,650 due under the lease agreement CT Page 6714 pursuant to its guaranty to Riverbend.
3. Breach of Contract by Modern for Removing Fixtures (Third Count)
The court finds that Modern breached the lease agreement because it removed fixtures that should have remained on the leased property. The lease agreement provides that all fixtures excluding trade fixtures, movable office furniture and equipment shall remain on the leased property and that the tenant will repair any damage for removing trade fixtures.[6] For an item to qualify as a trade fixture, the tenant must annex the fixture to leased property for the purposes of the tenant's business without the intention that the fixture become a part of the leased property, and the removal of the fixture from the leased property must not result in serious injury to the leased property. See Slosberg v.Callahan Oil Co., 125 Conn. 651, 653, 7 A.2d 853 (1939). Here, Modern removed doorknobs, a sink, a dishwasher, track lighting fixtures, a key card system and an alarm system (the fixtures). (See Tr. 8/4/99, pp. 58-65, 79-99; Tr. 8/5/99, pp. 50-51.)[7] These fixtures are not usually annexed to leased property for the purposes of broadcasting a television program, and no evidence exists concerning how the fixtures qualify as trade fixtures. Accordingly, the court finds Modern breached the lease agreement when it removed the fixtures.[8]
4. Breach of Guaranty by MTI for Modern's Removal of Fixtures (Fourth Count)
As previously stated, the court finds that in its guaranty to Riverbend, MTI agreed to be liable for Modern's obligations in the lease agreement. Accordingly, the court finds MTI liable for Modern's removal of the fixtures.
5. Conversion by Dalessandro (Fifth Count)
The court finds that Dalessandro is not liable for conversion because no evidence exists that Dalessandro personally requested the removal of the fixtures. "Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owners's rights. . . . [T]here are two general classes of conversion: (1) that in which possession of the allegedly converted goods is wrongful from the outset; and (2) that in which the conversion arises subsequent to an initial rightful possession." (Citations omitted; internal quotation marks omitted.) Maroun v. Tarro,35 Conn. App. 391, 396, 646 A.2d 251, cert. denied, 231 Conn. 926,648 A.2d 164 (1994). Here, Michel testified that Sanfratello told him that "Mr. Dalessandro had personally directed the move out of Riverbend One. . . ." (Tr. 8/5/99, p. 12.) Additionally, Dalessandro testified in a deposition that he decided what items should be removed from the leased CT Page 6715 property. (Tr. 8/13/99, p. 5.) No evidence, however, exists that Dalessandro personally removed or specifically instructed the removal of the fixtures that should have remained on the leased property pursuant to the lease agreement. Consequently, Riverbend has not proved conversion because no evidence exists that Dalessandro personally exercised dominion over the fixtures. See Maroun v. Tarro, supra, 35 Conn. App. 397 (holding no conversion occurred when no evidence presented that the defendant personally "ever operated or caused the operation of the plaintiff's" vehicle). Accordingly, the court finds that Dalessandro is not liable for conversion.
6. Conversion by Sanfratello (Sixth Count)
As previously stated, Riverbend withdrew this count.
7. Theft of Fixtures Pursuant to § 52-564 by Dalessandro (Seventh Seven)
The court finds that sufficient evidence does not exist that Dalessandro violated General Statutes § 52-564. Section 52-564
provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." "When treble damages are sought pursuant to § 52-564, as here, this court has decided that clear and convincing proof of the actions alleged is required in order to assess treble damages pursuant to § 52-564." (Internal quotation marks omitted.) Second Injury Fund v.Lupachino, 45 Conn. App. 324, 347, 695 A.2d 1072 (1997). "Statutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119." (Internal quotation marks omitted.) Suarez-Negrete v.Trotta, 47 Conn. App. 517, 520, 705 A.2d 215 (1998). Section 53a-119
provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." While Dalessandro may have supervised the move out of the leased property, no clear and convincing evidence exists that he intended to deprive Riverbend permanently of its fixtures. Accordingly, the court finds that Dalessandro is not liable for theft pursuant to § 52-564.
8. Theft of Fixtures Pursuant to § 52-564 by Sanfratello (Eighth Count)
As previously stated, Riverbend withdrew this count.
9. Breach of Contract for Refusing Access to Leased Premises (Ninth Count)
The court finds that Modern did not breach the lease agreement when it refused Riverbend access to the leased property. The lease agreement states in paragraph 26(c) that "after giving reasonable notice to CT Page 6716 Tenant, Landlord shall also have the right to enter the Demised Premises at reasonable hours for the purposes of showing the same to prospective purchasers or mortgagees . . .". (Plaintiff's exhibit 1.) GTE expressed an interest in purchasing the leased property. (See Tr. 8/5/99, pp. 67-69.) Michel testified that he orally requested access to show the leased property from Modern's representatives. (See Tr. 8/12/99, p. 30.) While Michel sent a letter to Sanfratello on November 30, 1995 requesting access to the leased property, he never clarified that he wanted to show the leased property to a potential purchaser. (See Plaintiff's exhibit 52).[9] The lease agreement only allowed Riverbend access to show the leased property to prospective purchasers or mortgagees. (See Plaintiff's exhibit 1). Consequently, the court does not find sufficient evidence that Riverbend reasonably notified Modern that it intended to show the leased property to a prospective purchaser. Accordingly, the court finds that Modern did not breach the lease agreement by refusing Riverbend access to the leased property.
10. Breach of Guaranty by MTI for Modern's Refusing Access to LeasedProperty (Tenth Count)
As previously stated, Modern is not liable for refusing access to the leased property; therefore, MTI is not liable.
11. Tortious Interference with a Business Relationship by Modern (CountEleven)
The court finds that Riverbend did not prove its claim of tortious interference with a business relationship by Modern because Riverbend did not prove tortious conduct or actual loss. "The necessary elements of a cause of action in tortious interference with business relations are the existence of a business relationship, an intentional and improper interference with that relationship and a resulting loss of benefits of the relationship. . . . A plaintiff states an actionable cause . . . by alleging that the defendant intentionally interfered with a business or contractual relationship of the plaintiff and that the plaintiff, as a result, has suffered an actual loss. . . ." (Citations omitted; internal quotation marks omitted.) Holler v. Buckley Broadcasting Corp.,47 Conn. App. 764, 768, 706 A.2d 1379 (1998). Actual loss for intentional interference with a business relationship occurs when "except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit." (Internal quotation marks omitted.) Dinapoli v. Cooke,43 Conn. App. 419, 428, 682 A.2d 603, cert. denied, 239 Conn. 951,686 A.2d 124 (1996), cert. denied, 520 U.S. 1213, 117 S.Ct. 1699,137 L.Ed.2d 825 (1997). Here, as previously stated, Modern had a right to deny Riverbend access because Riverbend did not give proper notification CT Page 6717 pursuant to the lease agreement. Moreover, Riverbend presented no evidence that a reasonable probability existed that GTE would have purchased or leased the property. Accordingly, the court finds that Riverbend did not prove its claim of an intentional interference with a business relationship by Modern.
12. Tortious Interference with a Business Relationship by Dalessandro(Twelfth Count)
As previously stated, Riverbend failed to prove tortious conduct or actual loss as a result of being barred from showing the leased property. Accordingly, Riverbend failed to prove its claim of intentional interference with a business relationship by Dalessandro.
13. Tortious Interference with a Business Relationship by Sanfratello(Thirteenth Count)
As previously stated, Riverbend withdrew this count.
B. Special Defenses
1. Laches (First Special Defense)
The defendants argue that the doctrine of laches should bar Riverbend's action. "The defense of laches has application only when there is established unreasonable, inexcusable, and prejudicial delay in bringing suit." Castonguay v. Plourde, 46 Conn. App. 251, 265, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997). Here, no unreasonable, inexcusable, or prejudicial delay occurred. Accordingly, the doctrine of laches fails to bar Riverbend's action.
2. Estoppel (Second Special Defense)
The defendants argue that the doctrine of estoppel should bar Riverbend's action. "[I]n the context of an equitable estoppel claim . . . [t]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." (Internal quotation marks omitted.) SKW Real Estate Ltd. Partnership v.Mitsubishi Motor Sales, Inc., 56 Conn. App. 1, 8, 741 A.2d 4 (1999), cert. denied, 252 Conn. 931, 746 A.2d 793 (2000). Here, with respect to the first count, Modern vacated the leased property under the belief that CT Page 6718 it properly exercised the cancellation option despite Riverbend's contention that it had not properly exercised the cancellation option. Moreover, with respect to the other counts, no evidence exists that Riverbend made any statements or representations that the defendants relied upon to their detriment. Accordingly, the doctrine of estoppel fails to bar Riverbend's action.
3. Waiver (Third Special Defense)
The defendants argue that the doctrine of waiver should bar Riverbend's action. As previously stated, the court found that the doctrine of wavier applies as a special defense to the first and second counts. No evidence exists, however, that waiver applies as a special defense to the other counts. Accordingly, the court finds waiver a special defense as to the first and second counts only.
4. Equitable Doctrine of Unclean Hands (Fourth Special Defense)
The defendants argue that the equitable doctrine of unclean hands should bar Riverbend's action. "The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief; he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." (Citations omitted.) Bauer v. Waste Management of Connecticut, Inc.,239 Conn. 515, 525, 686 A.2d 481 (1996). Here, no evidence exists that Riverbend's conduct was wrongful. Accordingly, the court finds that the equitable doctrine of unclean hands does not bar Riverbend's action.
5. Failure to State a Claim Upon Which Relief Can Be Granted (FifthSpecial Defense)
The defendants argue that Riverbend failed to state a claim upon which relief can be granted. Riverbend, however, stated a claim upon which relief could be granted in all of its counts. Accordingly, the court finds that the defendants' fifth special defense does not bar Riverbend's action.
6. Accord and Satisfaction (Sixth Special Defense)
The defendants argue that accord and satisfaction bars Riverbend's action. "[A]ccord and satisfaction occurs when a debtor renders performance different from that allegedly due his creditor and the creditor accepts the substituted performance in full satisfaction of thedisputed claim." (Emphasis in original; internal quotation marks omitted.) CT Page 6719Munroe v. Emhart Corp., 46 Conn. App. 37, 43-44, 699 A.2d 213, cert. denied, 243 Conn. 926, 701 A.2d 658 (1997). With respect to count one, Riverbend never accepted any money from Modern in full satisfaction of its claim. Moreover, no evidence exists that accord and satisfication would bar Riverbend's other counts. Accordingly, the court finds that accord and satisfication does not bar Riverbend's action.
7. Failure to Mitigate Damages (Seventh Special Defense)
The court finds that the seventh special defense is not applicable to this action because as previously stated, the court found no breach of the lease agreement occurred with respect to the first count.
8. Proper Execution of Early Termination Option (Eighth Special Defense)
The defendants argue that the proper execution of the early termination option bars Riverbend's action. As previously stated, with respect to counts one and two, the court found that Modern properly executed the cancellation option. No evidence exists, however, that the proper execution of the early termination option would bar Riverbend's other counts. Accordingly, the court finds that the proper execution of the early termination option is a special defense as to counts one and two only.
9. Damages Caused by Plaintiff (Ninth Special Defense)
The defendants argue as a special defense that any damages claimed by Riverbend were in fact caused by Riverbend. "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) Danbury v. DanaInvestment Corp., 249 Conn. 1, 17, 730 A.2d 1128 (1999). Here, arguing that Riverbend caused its own damages is not consistent with the factual allegations of the complaint. Moreover, no evidence exists that Riverbend caused its own damages. Accordingly, the court finds that the defendants' ninth special defense fails to bar Riverbend's action.
10. Prior Pending Action Doctrine (Tenth Special Defense)
The defendants argue that the prior pending action doctrine bars Riverbend's action. "The prior pending action doctrine permits the court to dismiss a second case that raises issues currently pending before the court. The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement." (Internal quotation marks omitted.)Cumberland Farms, Inc. v. Groton, 247 Conn. 196, 216, 719 A.2d 465
CT Page 6720 (1998). "The prior pending action doctrine is not a rule of unbending rigor, nor universal application, nor a principle of absolute law. . . . The doctrine does not implicate the court's subject matter jurisdiction but rather is a rule of justice and equity." (Citations omitted; internal quotation marks omitted.) BCBS Goshen Realty, Inc. v. Planning ZoningCommission, 22 Conn. App. 407, 409, 577 A.2d 1101 (1990). Here, the defendants fully litigated the present action. Consequently, deciding the merits of this present action would not be inequitable for the defendants. Accordingly, the court finds that the prior pending action doctrine fails to bar Riverbend's action.
 IV. DAMAGES
Based on the foregoing, the court awards Riverbend the following damages: $143,650.00 for the cancellation fee; $15,577.18 for the key card system (Tr. 8/5/99, p. 51; Plaintiff's exhibits 65A, 65B.); $1,886.40 for the alarm system (Tr. 8/5/99, pp. 24-27.); $1,820.00 for 28 non-generic track lights (Tr. 8/6/99, pp. 129-30.); and $180.00 for generic track lights (Tr. 8/6/99, pp. 129-30)[10] In summary, the court awards Riverbend damages in the amount of $163,113.58 from Modern and MTI pursuant to its guaranty. The court further awards reasonable attorneys' fees in the amount of $17,000.00 from Modern and MTI pursuant to its guaranty.[11]
 V. CONCLUSION
Pursuant to the foregoing, judgment shall enter against Modern and MTI in favor of Riverbend, and judgment shall enter in favor of Dalessandro.
MINTZ J.